1  Anthony Lanza, Esq. (SBN 156703)
   Brodie H. Smith, Esq. (SBN 221877)
2  LANZA & SMITH, P.C.
3  3 Park Plaza, Suite 1650
   Irvine, CA 92614-8540
4  Tel: (949) 221-0490
   Fax: (949) 221-0027
5  Email: tony@lanzasmith.com
         brodie@lanzasmith.com
6
7  Attorneys for plaintiffs Jean C. Wilcox,
   Michele Hood and Robert Hood, and
8  Sharie Green

       Gregory P. Dresser (SBN 136532)
       GDresser@mofo.com
       Jeffrey Rosenberg (SBN 264902)
       JRosenberg@mofo.com
       Barbara Barath  (SBN 268146)
       BBarath@mofo.com
       MORRISON & FOERSTER LLP
       425 Market Street
       San Francisco, California  94105-2482
       Telephone: 415.268.7000
       Facsimile: 415.268.7522

       Attorneys for Defendants
       J.P. Morgan Chase Bank, N.A. and
       JPMorgan Chase Bank, N.A., as
       successor in interest to EMC Mortgage
       LLC, formerly known as EMC
       Mortgage Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JEAN C. WILCOX, MICHELE HOOD, ROBERT HOOD, and SHARIE GREEN, Individually and on Behalf of All Other Consumers Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> EMC MORTGAGE CORPORATION, a Delaware corporation; J.P. MORGAN CHASE BANK, N.A., a Delaware corporation; DOES 1 through 100, inclusive; <br><br> Defendants. | CASE NO. 8:10-CV-01923-CJC-RNB <br><br> PUTATIVE CLASS ACTION <br><br> [Hon. Cormac J. Carney] <br><br> **JOINT STIPULATION RE: MOTION TO COMPEL F.R.C.P. RULE 26(f) CONFERENCE OF THE PARTIES, RULE 26(a) INITIAL DISCLOSURES, AND RESPONSES TO WRITTEN DISCOVERY** <br><br> Disc. Cut-Off:      None <br> Pretrial Conf.:     None <br> Trial Date:         None |

1    Pursuant to Rule 37-2 of the USDC, Central District, Local Rules, the parties
2  hereby submit the following Joint Stipulation regarding plaintiffs' Motion To Compel
3  F.R.C.P. Rule 26(f) Conference of The Parties, Rule 26(a) Initial Disclosures,
4  Responses To Requests For Production, and Responses To Special Interrogatories. This
5  Motion shall be heard at 9:30 a.m. on May 10, 2011, in Room 6D, United States District
6  Court, Spring Street, Los Angeles.
7
8  **TABLE OF CONTENTS**
9                                                                              Page
10  I.    Plaintiffs' Introductory Statement                                    3
11        A.    Factual Summary                                                 3
12        B.    The Present Discovery Dispute                                   4
13  II.   Defendants' Introductory Statement                                    5
14        A.    Factual Summary                                                 5
15        B.    Present Discovery Dispute                                       8
16  III.  Discovery Disputes                                                    8
17        A.    Refusal to Participate in Rule 26(f) Conference                 8
18              or Serve Initial Disclosures
19        B.    "Refusal" to Produce Deposition Transcript(s)                   10
20        C.    "Failure" to Respond to Written Discovery                       13
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

-2-
STIPULATION RE: MOTION TO COMPEL

# I.   PLAINTIFFS' INTRODUCTORY STATEMENT

Although plaintiffs have made protracted efforts to avoid this discovery dispute, defendants have insisted they have a right to delay discovery. As such, it is now necessary for the court to intervene and compel defendants' participation in Rule 26 requirements and other basic discovery obligations.

## A.   **Factual Summary**

This case is a putative class action involving a scheme by defendants J.P. Morgan Chase Bank and its subsidiary EMC Mortgage Corporation (collectively "Chase") to induce payments from distressed borrowers by offering illusory loan modifications. Chase is in the business of servicing mortgage loans on behalf of lenders and investors, including "pooled" mortgage-backed security investments. This lawsuit seeks to remedy Chase's unlawful acts in servicing mortgage loans, which are summarized as follows:

i.   intentionally failing, as a matter of company policy, to grant or implement loan modifications as promised, including misrepresenting the requirements and probability of achieving permanent loan modifications and the status of loan modification applications;

ii.   requesting and accepting interim debtor payments as a purported "condition" for promised permanent loan modifications, without any reasonable basis to believe that the loans would be permanently modified;

iii.   systematically erecting artificial obstacles in the loan modification process (such as repeatedly "losing" borrower documents; rotating personnel assigned to borrower files; altering modification requirements; and similar "red tape") with the intent of obstructing, delaying, or preventing permanent loan modifications;

iv.   instructing loan modification applicants to stop making their existing mortgage payments purportedly as a prerequisite to qualifying for a loan modification, thereby subjecting such applicants to additional financial jeopardy, including risk of

1  foreclosure, late payment fees or penalties, escalating interest, rising debt obligations,

2  and negative references on credit reports;

3      v. inducing borrowers to participate in temporary modifications, TPPs, and/or

4  forbearance agreements, then diverting payments made by borrowers to a "suspense

5  account," which is not applied to the borrowers' principal or interest, then reporting

6  borrowers as delinquent to credit reporting agencies, thus destroying their credit and

7  leaving borrowers at the mercy of defendants' loan modification hoax; and

8      vi. improperly recording notices of default regarding mortgage loans, initiating

9  unlawful foreclosure actions, and causing improper reconveyance fees and other charges

10  to be assessed.

11      Through their orchestrated loan modification hoax, Chase has induced consumers,

12  including plaintiffs, to continue making excess or other unjustified payments in pursuit

13  of illusory permanent loan modifications.  Chase has thereby delayed the need to

14  liquidate excessive and under-valued real estate inventory, whether REO or otherwise,

15  which might tax or exceed their available resources.

16      This scheme has increased profits through escalated loan servicing fees charged to

17  investors, and escalated default penalties and late fees charged to debtors (under their

18  Pooling & Servicing Agreements, defendants receive a higher fee for servicing

19  delinquent or distressed loans).  Chase's conduct has also artificially bolstered its

20  financial statements, both on its own behalf and on behalf of its clients (lenders and

21  investors), by minimizing mandatory reporting of defaulted or distressed loans.

22      Chase's practice of cruelly stringing along homeowners who need financial relief,

23  while ultimately failing to provide them with promised permanent loan modifications,

24  has been aptly characterized as a scheme of "extend & pretend."

25  **B.    The Present Discovery Dispute**

26      This case has been pending for over six months—since September 16, 2010 (the

27  initial filing date in state court).  In December, 2010, it was removed from state court.

28  In the interim, while the case was pending in state court, in October and November

1 | 2010, plaintiffs served a Demand for Inspection of Documents and Special
2 | Interrogatories on defendant EMC. EMC failed to respond.

3 |     In early February, 2011, plaintiffs' counsel asked Chase to participate in a
4 | conference of the parties, as required by Fed. R. of Civ. Proc. 26(f). Chase refused to
5 | participate, citing, during a telephonic Local Rule 7-3 conference, and via e-mail, an
6 | alleged entitlement to "test the sufficiency of the pleadings as a threshold matter" before
7 | engaging in any form of discovery. Chaise failed to cite legal authority.

8 |     In an attempt to further meet and confer, plaintiffs' counsel responded by citing
9 | Fed. R. of Civ. Proc. 26(a)(1)(C), which provides that if a party objects to its obligation
10 | to serve Rule 26(f) disclosures, the party *must* include its objection in the Rule 26 Joint
11 | Report. In other words, the Federal Rules of Civil Procedure do not recognize an excuse
12 | for refusing to simply *participate* in the early conference of the parties and Joint Report.
13 | Rule 26(a)(1)(C) contemplates that any objections to a party's obligation to provide
14 | initial disclosures shall be ruled on at the Scheduling Conference, by virtue of the
15 | objecting party's inclusion of the objection in the Rule 26 Joint Report. By refusing
16 | even to offer its objection in the prescribed manner, defendants have denied plaintiffs
17 | the opportunity to resolve this dispute in the manner contemplated by the Federal Rules
18 | of Civil Procedure, thus necessitating this motion and joint stipulation. *See,* Exhibit 1,
19 | meet & confer e-mail exchange dated February 28, March 15, and March 17, 2011.

20 |

21 | **II.  DEFENDANTS' INTRODUCTORY STATEMENT**

22 |     Defendants have agreed to conduct a Rule 26 conference on or before April 25,
23 | 2011. Defendants have proposed that, at that conference, the parties discuss and resolve
24 | the other issues raised in Plaintiffs' motion to compel. Defendants submit that this offer
25 | should resolve this motion to compel.

26 | **A.  Factual Summary**

27 |     This case is the latest in a series of failed efforts to craft some viable cause of
28 | action for borrowers to sue their mortgage servicers for not permanently modifying their

loans under the federal government's Home Affordable Modification Program ("HAMP"). The impediment to plaintiffs' claims, however, is that there is no private right of action under HAMP. *See, e.g., Aleem v. Bank of Am., N.A.*, No. 09-cv-01812-VAP(RZx), 2010 U.S. Dist. LEXIS 11944, at *8-11 (C.D. Cal. Feb. 9, 2010); *Gaitan v. Mortg. Elec. Registration Sys.*, No. 09-cv-1009 VAP(MANx), 2009 U.S. Dist. LEXIS 97117, at *38 (C.D. Cal. Oct. 5, 2009); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171 SI, 2010 U.S. Dist. LEXIS 70455, at *14-15 (N.D. Cal. June 30, 2010); *Villa v. Wells Fargo Bank, N.A.*, No. 10cv81 DMS (WVG), 2010 U.S. Dist. LEXIS 23741, at *7 n.1 (S.D. Cal. Mar. 15, 2010); *Bourdelais v. J.P.Morgan Chase Bank, N.A.*, No. 3:10-CV-670-HEH, 2011 U.S. Dist. LEXIS 35507, at *14 (E.D. Va. Apr. 1, 2011); *Winn v. Chase Mortgage Servs.*, No. 2:10cv395, at 5-7 (E.D. Va. Oct. 29, 2010). Nor is there a private right of action under the Emergency Economic Stabilization Act (EESA), HAMP's authorizing statute. *See, e.g., Gonzalez v. First Franklin Loan Servs.*, No. 1:09-cv-00941 AWI-GSA, 2010 U.S. Dist. LEXIS 1657, at *50 (E.D. Cal. Jan. 9, 2010).

Although it had no legal obligation to do so, Chase offered Plaintiffs various workout plans but, in most cases, determined that they were not qualified for permanent modifications. Chase even offered some Paintiffs in this action a permanent modification, but they declined the offer. Chase allowed Plaintiffs to enter into successive plans when Plaintiffs indicated that they could not make their mortgage payments or, in some cases, even allowed Plaintiffs to enter into reduced payment plans after they were unable to make the payments on their original plans.

Plaintiffs responded by suing Chase, claiming that their plans were contracts pursuant to which they were *entitled* to have their monthly payments reduced permanently. They base their claim on Chase's purported obligations under HAMP. The problem for Plaintiffs is that their *plans* did not promise permanent modifications, Plaintiffs did not supply any consideration for the permanent modifications to which they are supposedly entitled, and, at best, any promises made to Plaintiffs were unenforceable agreements to agree.

No fewer than eight federal courts have dismissed claims based on the assertions that HAMP (or some other legal requirement) obligated a Lender to provide borrowers with a permanent loan modification. *See Wigod v. Wells Fargo Bank, N.A.*, No. 10-cv-2348, 2011 U.S. Dist. LEXIS 7314, at *20 (N.D. Ill. Jan. 25, 2011) ("[T]he uniform Trial Period Plan has been interpreted as 'explicitly not being an enforceable offer for loan modification.'"); *Vida v. OneWest Bank, F.S.B.*, No. 10-987-AC, 2010 U.S. Dist. LEXIS 132000, at *15 (D. Or. Dec. 13, 2010) ("[T]he Plan states explicitly that modification is not guaranteed until the modification process is complete, and not at any intermediate point in the modification process."); *Torres v. Litton Loan Servicing L.P.*, No. 10-cv-01709-OWW-SKO, 2011 U.S. Dist. LEXIS 4616, at *6 (E.D. Cal. Jan. 18, 2011) (no "binding contract" to provide a modification because "[t]he Plan expressly provides that it may be terminated if 'the lender does not provide [Plaintiff] a fully executed copy of the Plan and the Modification Agreement'"); *Grill v. BAC Home Loans Servicing LP*, No. 10-CV-03057-FCD/GGH, 2011 U.S. Dist. LEXIS 3771, at *21 (E.D. Cal. Jan. 14, 2011) ("[T]he plain terms of [the TPP] expressly placed plaintiff on notice that issuance of a loan modification was not guaranteed by simply sending in the requested documentation and making trial period payments."); *Prasad v. BAC Home Loans Servicing LP*, No. 2:10-CV-2343-FCD/KJN, 2010 U.S. Dist. LEXIS 133938, at *12-13 (E.D. Cal. Dec. 7, 2010) (same); *Brown v. Bank of NY Mellon*, No. 1:10-CV-550, 2011 U.S. Dist. LEXIS 6006, at *8 (W.D. Mich. Jan. 21, 2011) (dismissing contract claim and holding that TPP "did not guarantee that Plaintiff's loan documents would be modified"); *Lonberg v. Freddie Mac*, No. 10-6033-AA, 2011 U.S. Dist. LEXIS 23137, at *16-17 (D. Or. Mar. 3, 2011) (noting that "every court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a permanent loan modification solely on the basis of the existence of a TPP does not sufficiently state a breach of contract claim"); *Bourdelais*, 2011 U.S. Dist. LEXIS 35507, at *14 (dismissing contract claim because "plain language of the TPP Agreement . . . belies [plaintiff's] claim"); *cf. Shurtliff v. Wells Fargo Bank, N.A.*, No. 1:10-CV-165

1    TS, 2010 U.S. Dist. LEXIS 117962, at *13 (D. Utah Nov. 5, 2010) (dismissing claim for

2    breach of alleged oral promise to modify because Trial Payment Plan stated that "any

3    modification would be contingent upon further approval").

4    **B.**    **The Present Discovery Dispute**

5        Defendants have offered to conduct a Rule 26 conference on or before April 25,

6    2011. *See* Ex. 2. Defendants submit that the dispute about the Rule 26 conference is

7    now moot.

8    **III.**    **DISCOVERY DISPUTES**

9      **A.**    **Refusal to Participate in Rule26(f) Conference or Serve Initial**

10         **Disclosures**

11       **(1) Plaintiffs' Contentions**

12        While Chase may object to the applicability of the initial disclosure requirement

13    to a particular case, it is not permitted to refuse participation in the Rule 26 conference.

14    All parties have a statutory duty to participate in the meeting in good faith "as soon as

15    practicable" pursuant to Rule 26(f)(1). Any party that objects to Rule 26 initial

16    disclosures must raise the objection *at the Rule 26 conference.* Rule 26(a)(1)(C)

17    provides:

18         "A party must make the initial disclosures at or within 14 days after the
         parties' Rule 26(f) conference unless a different time is set by stipulation or
19        court order, or unless a party objects during the conference that initial
20        disclosures are not appropriate in this action and states the objection in the
         proposed discovery plan. In ruling on the objection, the court must
21        determine what disclosures, if any, are to be made and must set the time for
22        disclosure."

23

24        Thus, if Chase chooses to object, it must object during the Rule 26 conference,

25    then include the objection in the Rule 26 Joint Report. This allows the presiding judge

26    to rule on the objection after the Rule 26 report is filed.

27        In refusing to abide by its duty to serve initial disclosures, Chase's counsel

28    explained, "…we won't know the scope of the case until the court rules on which

1  claims, if any, survive the pleadings motion(s). The scope of the case defines the scope

2  of discovery." *See,* Exhibit 1. Thus, without citing authority, Chase unilaterally

3  attempts to halt all discovery until after a ruling on its motion to dismiss. Frankly, it is

4  not clear if Chase believes in the existence of a rule barring all discovery until after its

5  motion to dismiss, or if Chase simply believes that this case somehow warrants an

6  exception. If the latter, Chase makes no attempt to articulate any exceptional

7  circumstances. In either case, there is no justification for Chase's stance.

8      Chase apparently hopes to dispatch some or all of plaintiffs' claims on a Rule

9  12(b)(6) motion, thus narrowing the scope or eliminating the case altogether. This does

10  not justify delaying plaintiffs' discovery.

11      In the event Chase manages to dismiss some, but not all, of the plaintiff's claims

12  on a motion to dismiss, the scope of discovery will not be affected. Rule 26(a) focuses

13  on factual matters, not legal claims. All of plaintiffs' claims revolve around a common

14  nucleus of operative facts. Rule 26(a)(1)(A) lists four categories of information that are

15  required to be exchanged, none of which are specific to any one claim. Rather, each

16  goes to the facts at the heart of the complaint. These include (i) names and addresses of

17  witnesses, (ii) document related to the facts of the complaint, (iii) damages figures, and

18  (iv) insurance policies. *See,* Fed. R. Civ. Proc. § 26(a)(1)(A) (West, 2011). None of

19  these categories would be affected by the potential dismissal of one or more claims.

20      Chase also apparently maintains the hope that the entire action will be dismissed,

21  without leave to amend, thus eliminating the need for discovery entirely. While this is

22  always a *possibility* in any case, courts do not allow parties to dodge discovery based on

23  wishful thinking. Defendants have cited no case law that would allow Chase to

24  unilaterally delay discovery until after a ruling on its motion to dismiss.

25  In any event, this is *not* a case that is likely to be defeated at all, let alone on a motion to

26  dismiss, as partially evidenced by the content of plaintiffs' next section below.

27

28

### (2) Chase's Contentions

Defendants have offered to conduct a Rule 26 conference on or before April 25, 2011. *See* Exhibit 2. Defendants have also offered to provide initial disclosures within 14 days of that conference. *Id.* Defendants submit that the disputes about these two items are now moot.

### (3) Plaintiff's Proposed Solution

Plaintiffs' proposed solution is to conduct the Rule 26(f) conference of the parties at the office of plaintiffs' counsel in Orange County within one week of the hearing on this motion, with a further order from the Court that defendants i) not delay their full & complete initial disclosures beyond 14 days (from the date of the conference) as prescribed by Rule 26; and ii) not delay or obstruct plaintiffs' right to promptly begin deposing witnesses, including but not limited to Cindy Walker and Janet Moynihan.

### (4) Chase's Proposed Solution

Chase proposes to conduct the Rule 26 conference on or before Monday, April 25, 2011, in the San Francisco office of Plaintiffs' counsel, or by videoconference or telephone. As contemplated by Rule 26(a)(1)(C), Chase suggests the parties come to the 26 conference prepared to discuss a detailed discovery plan, including any issues or objections surrounding initial disclosures and depositions. Plaintiffs have not previously noted a desire to depose the witnesses mentioned. The parties should discuss the depositions of these and other witnesses, in the first instance, at the Rule 26 conference.

### B. "Refusal" to Produce Deposition Transcript(s)

### (1) Plaintiffs' Contentions

Chase has failed to produce the transcript of at least one deposition of a former Chase employee (Erika Penaloza) taken in a related case – with virtually identical claims and factual allegations to this case. This transcript must be produced under Rule 26.

There are several insider witnesses (former Chase employees) who have stepped forward to "blow the whistle" against Chase's loan modification fraud. To date, these whistle-blower witnesses include Erika Penaloza, Janet Moynihan, and Cindy Walker.

These three witnesses have all provided devastating testimony confirming defendants' fraudulent loan modification practices and policies, verified pursuant to three signed declarations, each consistent with the other.   These witnesses were employed in the Chase/EMC Rancho Bernardo office (San Diego) for a total of roughly six years, until 2009/2010, primarily in the loss mitigation department.

The following is a brief summary of their testimony, copied from these three declarations:

> In my experience, Chase was committed to delaying, obstructing or denying permanent loan modifications for its borrowers, including those whose loans were serviced by EMC. This policy was implemented through a variety of tactics, including the following:  . . . a. Document Shuffle; b. Deceive Callers; c. Poor Hiring & Training; d. Rotate Assignments; e. Red Tape." Peneloza Decl., ¶5.

> Employees were instructed to deceive borrowers in discussing loan modification applications – including their status and the prospects for obtaining permanent loan modifications.  Management at Chase . . . instructed employees to tell borrowers that 1) their loan mod applications were still "in process," even when they were actually dead or hopeless; and 2) documents had not yet been received, or were incomplete, even though this was false.  . . . In fact, even during a few months when Chase imposed a freeze on loan mods, management told me and other employees to deceive borrowers by claiming that their loans were still being processed, when this was false.  Walker Decl., ¶5(i).

> Employees . . . often joked that the loan modification or loss mitigation department was a "ferris wheel" or a "merry-go-round." This was because loan modification applicants were forced through repeating cycles of delays, lost documents, red tape, and rotating personnel. Borrowers were seldom able to avoid going around and around in circles, rarely achieving the permanent loan modifications they sought. Moynihan Decl., ¶8.

> Chase management . . .  trained employees to delay and encumber the loan modification process. It was clear during my employment at Chase that the company's "ferris wheel" system was used to delay, obstruct, and reject loan modification applications.  Chase management encouraged this. Moynihan Decl., ¶6.

> Employees in the Rancho Bernardo office commonly joked that a document shredder was connected to the fax machine.  This joke was common because borrower documents were constantly lost, misplaced, or destroyed by Chase. Moynihan Decl., ¶7.

All three of these witness declarations were obtained by plaintiffs' counsel in *this* case.  Nevertheless, the deposition of Ms. Peneloza was taken by legal counsel in another, similar class action pending in Massachusetts, styled *Durmic et al v. J.P.*

1  *Morgan Chase Bank,* USDC Case No. 1:10-CV-10380-RGS.  Chase designated the

2  transcript of the Peneloza deposition as "confidential," thus obstructing the production

3  of the transcript in this case.  Counsel in *Durmic* has indicated he may well take

4  depositions of the other witnesses mentioned above, and it is anticipated that Chase will

5  also withhold those transcripts.

6       It was legal counsel for the plaintiffs in this case, not *Durmic*, who made the

7  initial contact with these witnesses and obtained these three declarations.  Plaintiffs are

8  already in possession of the core data (the substance of these witnesses' testimony),

9  which is clearly *not* confidential in any event.  Marking the transcripts as "confidential"

10  appears to be a ploy to obstruct discovery, escalate the costs of litigation, and intimidate

11  witnesses.  In fact, Chase has sent letters to these witnesses, intending to intimidate

12  them, and implying that they may need to hire counsel to defend themselves against

13  Chase – even though they are merely witnesses, not parties.  See, Exhibit 5.

14       In any event, the information contained in these deposition transcripts would only

15  conceivably be confidential as to third parties who are not in litigation with Chase, not

16  to other litigants and counsel in cases involving the same issues as discussed in such

17  depositions.  Finally, Chase has the burden to prove that the information in the Peneloza

18  deposition (and any other similar deposition that might exist) is truly confidential.

19  Chase has not shown that the testimony in Peneloza's deposition is confidential in any

20  way.

21           **(2)  Defendants' Contentions**

22       The heading of this section, chosen by Plaintiffs, is entirely misleading.

23  Defendants have not "refus[ed] to produce" or "failed to produce" anything.  Plaintiffs

24  never previously requested these transcripts or even mentioned anything about them.

25  And although Local Rule 37-1 requires a conference of counsel prior to moving to

26  compel, Plaintiffs failed to meet and confer on the purported "refusal" to provide the

27  deposition transcript.

28

1    Plaintiffs' motion to compel production of deposition transcripts is also premature

2    until after the Rule 26 conference.  Rule 26(d)(1) provides that "[a] party may not seek

3    discovery from any source before the parties have conferred as required by

4    Rule 26(f) . . . ."   The Rule 26 conference will afford the parties an opportunity to

5    discuss the scope and timing of discovery.

6    Although not germane to any issue presented by this motion, Defendants dispute

7    that the witnesses identified have personal knowledge of any issues that are relevant to

8    this action.  Plaintiffs' counsel have had unlimited access to the identified witnesses and

9    do not seem to have a need to obtain any further information from them through formal

10   discovery.

11   **(3)  Plaintiff's Proposed Solution**

12   Pursuant to Rule 26, defendants should promptly produce the deposition transcript

13   of Erika Peneloza, plus any other Chase employees whose depositions have been taken

14   in cases involving allegations of loan modification misconduct against Chase or EMC

15   within the last 5 years.  Chase may seek to protect these transcripts from disclosure to

16   third parties and the public through a protective order (most likely stipulated), but only

17   as to genuinely confidential material, restrictive in scope, not the generic type of content

18   in the Erika Peneloza declaration.

19   **(4)  Defendants' Proposed Solution**

20   The parties should discuss these issues at the Rule 26 conference.  Plaintiffs have

21   never before requested the Peneloza transcript or the transcripts of other Chase

22   employees.  As Local Rule 37-1 requires, Plaintiffs should also first confer with

23   Defendants about these issues before raising them with the Court.

24   **C.    "Failure" to Respond to Written Discovery**

25   **(1)  Plaintiffs' Contentions**

26   To date, EMC has not responded to the Request for Production of Documents and

27   Special Interrogatories served by plaintiffs in October and November, 2011 (Exhibits 3

28   & 4).  Defendants claim that other forms of written discovery cannot commence until

1 initial disclosures have been exchanged under Rule 26. The problem is that defendants
2 are unilaterally (and improperly) delaying the Rule 26 initial disclosures. Defendants
3 cannot obstruct discovery in this manner.

### (2) Defendants' Contentions

5 Defendants have agreed that they will deem the state court discovery served as of
6 the date of the Rule 26 conference. (*See* Ex. 2.) Defendants have further agreed that
7 they will respond to this discovery within the time limits set forth in the Federal Rules of
8 Civil Procedure. *Id.* Defendants submit that this should resolve this issue and any
9 dispute about these discovery requests is now moot.

### (3) Plaintiff's Proposed Solution

11 Both Chase & EMC should be obligated to provide full & complete, verified
12 responses to the Special Interrogatories propounded on November 5, 2010 (Exhibit 3)
13 and the Request for Production of Documents propounded on October 29, 2010 (Exhibit
14 4) no later than 6 months after the date each set of discovery was propounded.

### (4) Defendants' Proposed Solution

16 As noted above, Defendants have agreed to respond to Plaintiffs' state court
17 discovery. (*See* Ex. 2.) Any dispute about these discovery requests is now moot.

LANZA & SMITH, PLC

DATED: April 11, 2011          By: _____
                                    Brodie M. Smith

MORRISON & FOERSTER LLP

DATED: April 11, 2011          By: _____
                                    Gregory P. Dresser

- 14 -

**Brodie Smith**

| | |
|---|---|
| **From:** | Dresser, Gregory P. <GDresser@mofo.com> |
| **Sent:** | Thursday, March 17, 2011 4:23 PM |
| **To:** | Anthony Lanza |
| **Cc:** | Thomas D. Mauriello; Thomas, Nancy; Dresser, Gregory P. |
| **Subject:** | RE: Wilcox v. Chase -- meet & confer -- Rule 26 |

Tony:

We are not agreeable to having the Rule 26 conference by the end of this week.  The delay about which you complaint is of plaintiffs' own making.  We briefed and filed a motion to dismiss plaintiffs' first amended complaint.
If you had opposed that motion, rather than seeking to amend, we would be much closer to having a determination of what claims, if any, survived a pleadings motion and could move to the next stage of the case.

The second amended complaint was deemed filed a few days ago.  In that complaint, plaintiffs changed their allegations and added a new plaintiff.
The consequences of plaintiffs' amendment is that we will not know what, if anything, will remain in the case until our next motion to dismiss (which is not due until April 13) is resolved.  As Nancy noted in her email, we are entitled to test the sufficiency of the pleadings as a threshold matter, and we won't know the scope of the case until the court rules on which claims, if any, survive the pleadings motion(s).  The scope of the case defines the scope of discovery and is critical to determining realistic case deadlines, so any early meeting before the court rules will only impose unnecessary costs.

If you are going to file a motion, please let us know so that we can discuss a convenient briefing schedule and hearing date.

Greg
Gregory P. Dresser
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
415.268.6396
gdresser@mofo.com

---

From: Anthony Lanza [mailto:tony@lanzasmith.com]
Sent: Tuesday, March 15, 2011 5:26 PM
To: Thomas, Nancy
Cc: Dresser, Gregory P.; 'Thomas D. Mauriello'; Brodie Smith
Subject: Wilcox v. Chase -- meet & confer -- Rule 26

Nancy.

We obviously disagree as to the benefits of a Rule 26 meeting at this time.
As discussed on Feb 23, we still believe it is time to proceed with the FRCP

1

EXH 1

26 requirements, including the early meeting of counsel, plus of course
discovery. As you know, this case was filed on Sept 16, 2010 --half a year
ago. Our initial written discovery was propounded in the Fall 2010. There
has yet to be any exchange of discovery in this case.


The appropriate procedure here is to conduct the Rule 26 conference "as soon
as practicable." This could be very brief, based on your assertions below.
We are, however, aware of no authority for refusing to hold the conference.
Your objections may be preserved by inclusion in the joint Rule 26 report -
which normally includes a discovery plan. See, FRCP 26(f) and (a)(1)(C).


We therefore propose that the Rule 26 conference occur by the end of the
week, and that Chase then provide its proposed text for the Rule 26 report
(joint pleading), and we will provide ours, which will then be integrated
into one doc. Presumptively you will be objecting to any disclosures, so
the joint report could be limited to your objections, a brief summary of the
grounds for them, and our brief response. It might also, however, include
some additional items listed under local rule 26.


This conference should occur by the end of the week, and the joint Rule 26
report should be submitted to the court within a week thereafter.


Alternatively, Chase may move for a protective order seeking to delay the
Rule 26 obligations, or we may move to compel discovery (including Rule 26
disclosures) under Rule 37. Please advise which of these options you
prefer.


Tony.



From: Thomas, Nancy [mailto:NThomas@mofo.com]
Sent: Monday, February 28, 2011 6:19 PM
To: Anthony Lanza; Thomas D. Mauriello
Cc: Dresser, Gregory P.
Subject: Wilcox meet and confer issues


Tom and Tony,

2

I wanted to get back to you on the two issues we discussed during our meet
and confer. On the class cert. deadline, we still are of the view that the
judge is more likely to grant the request if we ask to extend the deadline
to a date certain rather than a date contingent on other unspecified dates.
We would agree to re-visit that date if necessary based on how the case
progresses, but think the judge will want to have a specific date on the
calendar. We understand that you disagree, so in the spirit of compromise,
we will agree to stipulate to taking the current deadline off calendar and
to explain in the stipulation that the parties will address it in the case
management statement as part of a comprehensive case schedule. If you do
not agree to that approach, you can file a motion and we won't oppose your
request to set a deadline that is contingent on completion of class cert.
discovery.

On the early meeting of counsel, you have had a good deal of time to set the
pleadings, amending twice and adding new plaintiffs with each amendment. We
timely moved to dismiss the amended complaint and our motion would have been
heard by now if not for your decision to amend for the second time. We are
entitled to test the sufficiency of the pleadings as a threshold matter, and
we won't know the scope of the case until the court rules on which claims,
if any, survive the pleadings motion(s). The scope of the case defines the
scope of discovery and is critical to determining realistic case deadlines,
so any early meeting before the court rules will only impose unnecessary
costs. Accordingly, we do not agree that an early meeting would have any
benefit at this point.

Please let me know if you think any further meet and confer on these issues
would be productive.

Nancy

Nancy R. Thomas | Morrison & Foerster LLP
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013
213.892.5561 | 213.892.5454 (fax)

-----------------------------------------------------------------

To ensure compliance with requirements imposed by the IRS, Morrison &
Foerster LLP informs you that, if any advice concerning one or more.U.S.
Federal tax issues is contained in this communication (including any
attachments), such advice is not intended or written to be used, and cannot
be used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

## Dresser, Gregory P.

**From:** Dresser, Gregory P.

**Sent:** Thursday, April 07, 2011 9:43 AM

**To:** 'Brodie Smith'

**Cc:** Dresser, Gregory P.

**Subject:** RE: Wilcox v. Chase - Motion to Compel, Joint Stipulation

Brodie:

As to the joint report, we are agreeable to having that submitted 14 days after
the Rule 26 conference.

As to the other items in your email, immediately below, you did not meet and
confer about them in advance of sending your portion of the joint stipulation.
Moreover, many of them are not even mentioned in your part of the joint
stipulation.

Please let us know if you reconsider and would like to proceed along the lines
outlined in the email that I sent at 2:54 p.m. yesterday, with us also agreeing
to submit the joint report 14 days after the Rule 26 conference.

Gregory P. Dresser
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
415.268.6396
gdresser@mofo.com

---

**From:** Brodie Smith [mailto:brodie@lanzasmith.com]
**Sent:** Wednesday, April 06, 2011 5:58 PM
**To:** Dresser, Gregory P.
**Cc:** 'Anthony Lanza'; 'Thomas D. Mauriello'
**Subject:** RE: Wilcox v. Chase - Motion to Compel, Joint Stipulation

Greg,

There is still a significant amount of built-in delay here. The District Court clerk advised that the
scheduling conference will not be set until after the joint report is filed. Under your #3, the
joint report would not be filed until the scheduling conference is set. The scheduling
conference should occur within 120 days of removal (which would be next week). That is not
happening. But, we need to move this case forward. See our responses below:

1. We need the transcript, with no redactions, within one week. We don't see this as a
   complicated issue.
2. We need the right to begin taking witness depositions after the date of the Rule 26
   meeting.
3. The Rule 26 meeting will proceed no later than April 26; the disclosures <u>and</u> joint report
   will be due 2 weeks after the Rule 26 meeting; defendants will not object to the

4/7/2011

EXH. 2

disclosures, but must instead actually provide substantive disclosures; defendants disclosures will include any depo transcripts for Chase or EMC employees (past or present) whose depos have been taken in matters involving allegations of loan modification or Hamp misconduct against Chase or EMC within the last 5 years.

4. Responses to both sets of written discovery will be due by the end of April.

Please let us know how you would like to proceed.

Brodie

---

**From:** Dresser, Gregory P. [mailto:GDresser@mofo.com]
**Sent:** Wednesday, April 06, 2011 2:54 PM
**To:** Brodie Smith
**Cc:** Anthony Lanza; Thomas D. Mauriello; Dresser, Gregory P.
**Subject:** RE: Wilcox v. Chase - Motion to Compel, Joint Stipulation

Brodie:

Taking your items in order:

1. We will be prepared to discuss this at the Rule 26 conference. The first we heard of this request is when we received your portion of the joint stipulation.

2. We will be prepared to discuss this at the Rule 26 conference. The first we heard of this request is when we received your portion of the joint stipulation.

3. We agree that the initial disclosures will be due 14 days after the Rule 26 conference. The due date for the joint report will be determined by the date the Court sets for the case management and scheduling conference.

4. We are willing to agree that these discovery requests will be deemed served on the date of the Rule 26 conference and that our responses will be due thereafter per the deadlines established in the FRCP.

Please let us know how you would like to proceed.

Gregory P. Dresser
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
415.268.6396
gdresser@mofo.com

---

**From:** Brodie Smith [mailto:brodie@lanzasmith.com]
**Sent:** Wednesday, April 06, 2011 12:51 PM
**To:** Dresser, Gregory P.; 'Anthony Lanza'
**Cc:** 'Thomas D. Mauriello'
**Subject:** RE: Wilcox v. Chase - Motion to Compel, Joint Stipulation

Greg,

4/7/2011

We need to agree on the other issues in the Motion to Compel / Joint Stipulation, specifically:

1. Producing the deposition transcript of Erika Peñeloza,
2. An understanding that we can take the depositions of other Chase/ EMC witnesses whose declarations we have obtained,
3. Chase & EMC's cooperation in preparing a Joint Report (including setting a date for exchange of Rule 26 initial disclosures, within 14 days), and
4. Chase & EMC's agreement to serve responses to the written discovery served in October and November.

If your client is now willing to meet these obligations, we may be able to forget about the motion.

Brodie H. Smith
Lanza & Smith
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, CA 92614-8540

(949) 221-0490 Phone
(949) 221-0027 Fax
brodie@lanzasmith.com
www.lanzasmith.com

The preceding email message and any attachments may be confidential or protected by the attorney-client privilege, work product doctrine, or other privileges, and may be restricted from disclosure by applicable state and federal law. It is not intended for transmission to, or receipt by, any unauthorized persons. If the reader of this message is not the intended recipient, you are hereby notified that you have received this e-mail in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this e-mail in error, please erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Lanza & Smith client(s) represented by the Firm pursuant to written agreement, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message may contain advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**From:** Dresser, Gregory P. [mailto:GDresser@mofo.com]
**Sent:** Tuesday, April 05, 2011 6:27 PM
**To:** Anthony Lanza; Brodie Smith
**Cc:** Thomas D. Mauriello; Dresser, Gregory P.
**Subject:** Wilcox v. Chase - Motion to Compel, Joint Stipulation

Counsel:

In an effort to avoid motion practice on the issues raised in the joint stipulation that you sent us, we propose that we conduct the Rule 26 conference in Wilcox on or before Monday, April 25. We could have the conference in Mr. Mauriello's San Francisco office, or by videoconference or telephone.

During the conference, we can discuss the other issues raised in your motion. We think that this obviates the need for the motion to compel, but please let us know if you disagree.

4/7/2011

Gregory P. Dresser
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
415.268.6396
gdresser@mofo.com

---

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

===

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---

---

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

===

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---

4/7/2011

1  Anthony Lanza, Esq. (SBN 156703)
   Brodie H. Smith, Esq. (SBN 221877)
2  LANZA & SMITH
   3 Park Plaza, # 1650
3  Irvine, CA 92614-8540
   Tel: (949) 221-0490
4  Fax: (949) 221-0027
   Email: tony@lanzasmith.com
5         brodie@lanzasmith.com

6  Thomas D. Mauriello, Esq. (SBN 144811)
   MAURIELLO LAW FIRM, APC
7  1181 Puerta Del Sol, Suite 120
   San Clemente CA 92673
8  Tel: (949) 542-3555
   Fax: (949) 606-9690
9  Email: tomm@maurlaw.com

10  **Attorneys for Plaintiff, Jean C. Wilcox**

11

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13           **COUNTY OF ORANGE, CIVIL COMPLEX SANTA ANA**

14

15  JEAN C. WILCOX, individually and on          CASE NO.:  30-2010-00408955-CU-BT-CXC
    behalf of all other consumers similarly
16  situated and in the public interest;         Complex Litigation (Class Action)

17           Plaintiff,                          **SPECIAL INTERROGATORIES**

18  vs.

19

20  EMC MORTGAGE CORPORATION, a
    Delaware corporation; DOES 1 through 100,
21  inclusive;

22           Defendants.

23

24       PROPOUNDING PARTY:     Plaintiff Jean C. Wilcox

25       RESPONDING PARTY:      Defendant EMC Mortgage Corporation

26       SET NUMBER:            One

27

28

*ExH. 3*

Plaintiff Jean Wilcox ("Plaintiff" or "Wilcox"), acting individually and on behalf of all other consumers similarly situated and in the public interest, requests that, pursuant to California Code of Civil Procedure §2030.020, Defendant EMC Mortgage Corporation respond to the following interrogatories within thirty (30) days from the date of service hereof.

In answering these Interrogatories, please furnish all information that is available to you or within your control, including information in the possession of your attorneys or investigators for you or your attorneys that is not protected by any privilege, not merely information known to you or of your own personal knowledge. If you cannot answer the following Interrogatories in full, after exercising due diligence to secure the information, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

## I. DEFINITIONS

1.     "IDENTIFY" when referring to a person, shall include: (1) his or her name, (2) address at the time referred to, (3) present or last known address, (4) employer at the time referred to and employer's address, (5) present employer and employer's address, and (6) position, title and responsibilities at time referred to and at present, or most recent position, title and responsibilities.

2.     "IDENTIFY" when referring to a document shall include: (1) the location of the document and its custodian or possessor, (2) the identity of the maker or author of the document, (3) the identity of the person to whom the document was directed, (4) the date on which the document was made or prepared, and (5) if a book, journal or other publication, its name and publisher and the volume, date, issue and pages in which the document appears.

3.     "DOCUMENT" includes any statement, paper, writing, letter, memorandum, report, log book, note, article, magazine, journal, journal article, newsletter, blueprint, drawing, design, sketch, book, text book, brochures, laboratory records, audio or video tape, record, recording, photograph, moving picture, negatives, calendars, diaries, messages or logs of telephone calls, facsimile transmissions (including cover sheets and confirmations), sales, advertising or promotional literature or materials, and any other object containing a written, printed, spoken or photographic image or sound.

/ / /

In addition, the term "document" includes "electronic data," which means the original and any non-identical copies and drafts of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or remarks, program change logs and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PRF files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active, deleted file or file fragment. Electronic data includes any and all items stored on computer memories or computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, hard disks, floppy disks, CD-ROM, Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media or any other vehicle for digital data storage and/or transmittal. The term includes all Electronic Bulletin Board Services, including all levels of access, sub-boards, conferences and all information contained therein.

4.     "COMMUNICATE" or "COMMUNICATIONS" means and includes every manner of disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, e-mail, mail, facsimile, personal delivery, overnight delivery, or otherwise.

5.     "YOU," "YOUR," "EMC," or "DEFENDANT" shall refer to EMC Mortgage Corporation including but not limited to its employees, officers, directors, contractors, agents, successors and assigns.

6.     "SERVICER," "SERVICED," OR "SERVICING" shall mean receiving any payments from (or for) a residential real estate mortgage loan customer pursuant to the terms of any loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments with respect to the amounts received from (or for) the customer as may be required pursuant to the terms of the loan. These terms shall also include any related loan servicing activity such as the administration of loan accounts, sending periodic billing statements to a consumer, maintaining records of the status of the customer's loan accounts, providing information to and

resolving disputes with the customer regarding loan accounts, collecting loan payments, foreclosing on real property, furnishing of information to consumer reporting agencies, and collecting or imposing fees in relation to any of the foregoing.

7. "CUSTOMER" or "CUSTOMERS" means a PERSON who has had a residential real estate mortgage loan that has been SERVICED by YOU.

8. "MORTGAGE LOAN MODIFICATION" means any modification (whether actual, requested OR proposed, and whether "trial," temporary, or permanent) of the material terms of a residential real estate mortgage loan SERVICED by YOU.

9. "FTC ORDER" means the Stipulated Final Judgment and Order filed on or about September 9, 2008 in the case entitled *Federal Trade Commission v. EMC Mortgage Corporation, et al.*, Case No. 4:08-cv-338, U.S.D.C, N. Dist. Texas.

10. "PLAINTIFF" shall refer to Jean Wilcox, including her successors, assigns, and agents.

11. "RELATE" or "RELATING" means all information that constitutes, evidences, explicitly or implicitly refers to, discusses, evaluates, considers, reviews, reports on, or was created as a result of, the subject matter of the request.

12. "OR" means "and/or" and shall be given the most inclusive meaning possible.

13. "AND" means "and/or" and shall be given the most inclusive meaning possible.

14. The use of the singular shall be deemed to include the plural, and vice versa; and the use of one gender shall include the other, as appropriate in the context.

## II. RELEVANT TIME PERIOD

Unless otherwise specified, the RELEVANT TIME PERIOD for these interrogatories is the period from January 1, 2007 to the present.

## II. INTERRGATORIES

**INTERROGATORY NO. 1:**

Please IDENTIFY all CUSTOMER complaints against YOU RELATING to MORTGAGE LOAN MODIFICATIONS.

///

**INTERROGATORY NO. 2:**

Please IDENTIFY all legal complaints, claims or lawsuits in any civil, criminal, administrative or other proceedings against YOU by any plaintiff or claimant, including any governmental, regulatory, administrative, or law enforcement agencies, regarding MORTGAGE LOAN MODIFICATIONS.

**INTERROGATORY NO. 3:**

Please specify the number of residential real estate mortgage loans that YOU have serviced in each of the past four years (California AND nationwide).

**INTERROGATORY NO. 4:**

Please specify the number of applications OR requests received by YOU for trial OR temporary MORTGAGE LOAN MODIFICATIONS for each of the past four years (California AND nationwide).

**INTERROGATORY NO. 5:**

Please specify the number of applications OR requests approved by YOU for trial or temporary MORTGAGE LOAN MODIFICATIONS for each of the past four years (California AND nationwide).

**INTERROGATORY NO. 6:**

Please specify the number of applications OR requests received by YOU for permanent MORTGAGE LOAN MODIFICATIONS for each of the past four years (California AND nationwide).

**INTERROGATORY NO. 7:**

Please specify the number of applications OR requests approved by YOU for permanent MORTGAGE LOAN MODIFICATIONS for each of the past four years (California AND nationwide.

**INTERROGATORY NO. 8:**

Please state the total revenues YOU have received from the SERVICING of residential real estate mortgage loans for each year during the past four years (California AND nationwide).

**INTERROGATORY NO. 9:**

Please state the total revenues YOU have received from SERVICING residential real estate mortgage loans that were being SERVICED under trial OR temporary MORTGAGE LOAN

1  MODIFICATIONS for each year during the past four years (California AND nationwide).

2  **INTERROGATORY NO. 10:**

3      Please state the total revenues YOU have received from SERVICING residential real estate

4  mortgage loans that were being SERVICED under permanent MORTGAGE LOAN

5  MODIFICATIONS for each year during the past four years (California AND nationwide).

6  **INTERROGATORY NO. 11:**

7      Please IDENTIFY the per-loan fees charged to CUSTOMERS, investors, borrowers, lenders, or

8  others by YOU for SERVICING residential real estate mortgage loans that are in distress (i.e, that are

9
10  delinquent, in default, or in foreclosure), as opposed to residential real estate mortgage loans that are

11  not in distress.

12  **INTERROGATORY NO. 12:**

13      Please IDENTIFY all lawsuits, administrative actions, official notices, notices of violations,

14  notices of proposed action, orders,  stipulations, business practices investigation reports, complaints,

15  OR other DOCUMENTS received by YOU from any federal, state, OR local law enforcement,

16  investigatory, governmental, quasi-governmental or self-regulatory agency OR body, RELATING to

17  MORTGAGE LOAN MODIFICATIONS.

18  **INTERROGATORY NO. 13:**

19      Please IDENTIFY electronically-stored information, including computerized databases, relating

20  to methods for identifying YOUR CUSTOMERS, including any  DOCUMENTS that IDENTIFY the

21  system, the types of categories of information stored in each system, the back-up and retention program

22  for each system, and the reports generated by each system.

23  **INTERROGATORY NO. 14:**

24      Please IDENTIFY all revenues received by YOU RELATING to MORTGAGE LOAN

25  MODIFICATIONS that have occurred as a result of programs sponsored by of the United States

26  government, including but not limited to the Home Affordable Modification Program ("H.A.M.P.") for

27  each of the past four years.

28

**INTERROGATORY NO. 15:**

Please IDENTIFY all policies, procedures, OR legal guidance RELATING to YOUR compliance efforts with the Home Affordable Modification Program ("H.A.M.P.").

**INTERROGATORY NO. 16:**

Please IDENTIFY the employee OR employees designated to coordinate and be accountable for the data integrity program as referred to in Section VII of the FTC Order.

**INTERROGATORY NO. 17:**

Please IDENTIFY all civil, administrative OR other proceedings against YOU OR investigations against YOU by governmental, regulatory, administrative, or law enforcement agencies regarding MORTGAGE LOAN MODIFICATIONS in which YOU have testified in deposition OR examinations under oath.

**INTERROGATORY NO. 18:**

Please IDENTIFY all people (including but not limited to address and phone number) who were employed by YOU, whether as W2 employees or 1099 contractors, during the RELEVANT TIME PERIOD, who were in any way involved in any MORTGAGE LOAN MODIFICATION, including current and former employees. [For current employees, YOU need only state the name, title, duties, and current office location].

**INTERROGATORY NO. 19:**

Please IDENTIFY all PERSONS who were involved in developing YOUR policies, protocols AND procedures for handling MORTGAGE LOAN MODIFICATIONS.

**INTERROGATORY NO. 20:**

Please describe all actions YOU have taken to ensure that YOUR policies, protocols AND procedures for handling MORTGAGE LOAN MODIFICATIONS are followed and do not vary from office to office, including any instruction materials OR training manuals provided to YOUR employees describing how to follow such policies, protocols AND procedures.

/ / /

**INTERROGATORY NO. 21:**

Please IDENTIFY by name, job title, and department all of YOUR officers, directors, managers and employees who are qualified to testify about YOUR policies, protocols AND procedures for handling MORTGAGE LOAN MODIFICATIONS.

**INTERROGATORY NO. 22:**

State how much, in dollars, YOU have refunded in each of the past four years to CUSTOMERS who have complained that they were overcharged OR improperly charged RELATING to MORTGAGE LOAN MODIFICATIONS.

**INTERROGATORY NO. 23:**

Describe all investigations YOU have undertaken or received from any source (other than your attorneys) in response to inquiries, investigations OR complaints that YOUR policies, protocols OR procedures for handling MORTGAGE LOAN MODIFICATIONS were unlawful or improper.

**INTERROGATORY NO. 24:**

Describe all procedures YOU have in place to ensure YOUR policies, protocols OR procedures for handling MORTGAGE LOAN MODIFICATIONS are consistent with the requirements of California law.

**INTERROGATORY NO. 25:**

For any electronically-stored information, including computerized databases, that contain information in any way RELATING to methods for identifying CUSTOMERS, describe each system of electronically stored information by stating the name of the system, the information or types of categories of information entered in, transmitted to, or stored in each system, the back-up and retention program for each system, and each type of report or form of report that is, was, or can be generated by such system.

**INTERROGATORY NO. 26:**

Please state the following for each lawsuit filed against YOU, Chase, J.P. Morgan Chase Bank, OR J.P. Morgan Chase & Co. since January 1, 2008, making any allegations RELATING to MORTGAGE LOAN MODIFICATIONS: all plaintiffs; all defendants; date of filing; jurisdiction; federal vs. state court; whether class action allegations have been asserted or granted or denied.

**INTERROGATORY NO. 27:**

If you believe that the identities OR addresses of CUSTOMERS are not ascertainable for purposes of class certification, state all facts that YOU believe support such a position.

**INTERROGATORY NO. 28:**

If YOU believe that the claims of the named PLAINTIFF are not typical of the claims of the other members of the putative class as defined in the complaint in this action, state all facts that YOU believe support such a position.

**INTERROGATORY NO. 29:**

If YOU believe that the named PLAINTIFF or her counsel are not adequate representatives of the putative class, state all facts that YOU believe support such a position

**INTERROGATORY NO. 30:**

If YOU believe that this lawsuit does not raise predominant common issues of fact or law, state all facts that YOU believe support YOUR position.

**INTERROGATORY NO. 31:**

If YOU believe that whether YOUR policies, protocols OR procedures for handling MORTGAGE LOAN MODIFICATIONS were inconsistent with California law does not raise common issues of fact or law for the putative class, state all facts YOU believe support YOUR position.

**INTERROGATORY NO. 32:**

If the claims asserted in this action are or may be covered by polices of insurance or indemnification, whether or not there has been a reservation of rights or whether such claim has been tender to the insurance carrier, IDENTIFY all such polices by stating the name of the carrier, the policy number, the effective dates of the policies and the DOCUMENTS evidencing such policies.

**INTERROGATORY NO. 33:**

If YOU believe that the claims asserted against YOU in this lawsuit are not manageable in terms of proving the claims asserted in PLAINTIFF'S complaint on a class-wide basis, state all facts YOU believe support such an assertion.

/ / /

1 | **INTERROGATORY NO. 34:**

2 | If YOU believe that use of the class action procedure is not superior to other available methods

3 | for the adjudication of the controversy raised in this lawsuit, state all facts YOU believe support such a

4 | conclusion and what superior methods YOU believe are available.

5 | **INTERROGATORY NO. 35:**

6 | Please IDENTIFY all DOCUMENTS specifying the revenues YOU charge AND collect for

7 | SERVICING residential mortgage loans in the state of California, whether payable by CUSTOMERS

8 | or lenders, or borrowers, or investors or mortgagees, or others.

9 |

10 | LANZA & LANZA, PLC

11 |

12 | DATED: November 5, 2010        By: _____

13 | Anthony Lanza

14 | LANZA & SMITH, P.C.
3 Park Plaza, # 1650

15 | Irvine, CA 92614-8540
Tel: (949) 221-0490

16 | Fax: (949) 221-0027
Email: tony@lanzagoolsby.com

17 |

18 | Thomas D. Mauriello, Esq.
MAURIELLO LAW FIRM, APC

19 | 1181 Puerta Del Sol, Suite 120
San Clemente CA 92673

20 | Tel: (949) 542-3555
Fax: (949) 606-9690
Email: tomm@maurlaw.com

21 | **Attorneys for Plaintiff Jean C. Wilcox**

22 |

23 |

24 |

25 |

26 |

27 |

28 |

X:\D\546-01\Discovery\Special Interrogatories.doc

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE – CIVIL COMPLEX

I am a citizen of the United States, over the age of 18 years, employed in the County of Orange in the office of a member of the State Bar at whose direction service was made. I am not a party to the within action. My business address is 3 Park Plaza, Suite 1650, Irvine, CA, 92614.

On **November 5, 2010**, I served the following document described as **SPECIAL INTERROGATORIES (SET ONE)**, on the interested parties in this action by placing the original thereof enclosed in a sealed envelope addressed as follows:

Wendy M. Garbers, Esq.                            *Counsel for Defendant EMC Mortgage Corp.*
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

EMC Mortgage Corporation                         *Agent for Service of Process for*
c/o CT Corporation System                         *EMC Mortgage Corp.*
818 W. 7th Street
Los Angeles, CA  90017

Tom Mauriello, Esq.                               *Co-Counsel for Plaintiff Jean Wilcox*
Mauriello Law Firm, APC
1181 Puerta Del Sol, Suite 120
San Clemente CA 92673

   **X**     **BY MAIL**: I caused such envelopes (with postage thereon fully prepaid) to be placed in the United States mail at Irvine, California. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of parties served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposition for mailing specified in the affidavit.

   _____     **BY E-MAIL**: I caused the above documents to be served by e-mail to the offices of the addressee(s).

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **November 5, 2010**, at Irvine, California.

Leona Smialek

X:\D\546-01\Pleadings\POS.doc

1  Anthony Lanza, Esq. (SBN 156703)
   Brodie H. Smith, Esq. (SBN 221877)
2  LANZA & SMITH
   3 Park Plaza, # 1650
3  Irvine, CA 92614-8540
   Tel: (949) 221-0490
4  Fax: (949) 221-0027
   Email: tony@lanzasmith.com
5        brodie@lanzasmith.com

6  Thomas D. Mauriello, Esq. (SBN 144811)
   MAURIELLO LAW FIRM, APC
7  1181 Puerta Del Sol, Suite 120
   San Clemente CA 92673
8  Tel: (949) 542-3555
   Fax: (949) 606-9690
9  Email: tomm@maurlaw.com

10 **Attorneys for Plaintiff, Jean C. Wilcox**

11

12            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13        **COUNTY OF ORANGE, CIVIL COMPLEX CENTER SANTA ANA**

14

15 JEAN C. WILCOX, individually and on         CASE NO.: 30-2010-00408955-CU-BT-CXC
   behalf of all other consumers similarly
16 situated and in the public interest;        Complex Litigation (Class Action)

17         Plaintiff,                          **DEMAND FOR INSPECTION OF
                                               DOCUMENTS**
18
   vs.
19
   EMC MORTGAGE CORPORATION, a
20 Delaware corporation; DOES 1 through 100,
   inclusive;
21
         Defendants.
22

23

24     PROPOUNDING PARTY:    Plaintiff Jean C. Wilcox

25     RESPONDING PARTY:     Defendant EMC Mortgage Corporation

26     SET NUMBER:           One

27

28

                                        - 1 -

*EXH. 4*

Plaintiff Jean C. Wilcox ("Plaintiff" or "Wilcox"), acting individually and on behalf of all other consumers similarly situated and in the public interest, requests, pursuant to California Code of Civil Procedure §2031.010 *et seq.*, that Defendant EMC Mortgage Corporation provide written responses to the following demand for inspection of documents, and produce documents responsive thereto at the Mauriello Law Firm, 1181 Puerta Del Sol, Suite 120, San Clemente, CA  92673, within thirty (30) days from the date of service hereof.

## DEFINITIONS

1.   "IDENTIFY" when referring to a person, shall include: (1) his or her name, (2) address at the time referred to, (3) present or last known address, (4) employer at the time referred to and employer's address, (5) present employer and employer's address, and (6) position, title and responsibilities at time referred to and at present or most recent position, title and responsibilities.

2.   "IDENTIFY" when referring to a document shall include: (1) the location of the document and its custodian or possessor, (2) the identity of the maker or author of the document, (3) the identity of the person to whom the document was directed, (4) the date on which the document was made or prepared, and (5) if a book, journal or other publication, its name and publisher and the volume, date, issue and pages in which the document appears.

3.   "DOCUMENT" includes any statement, paper, writing, letter, memorandum, report, log book, note, article, magazine, journal, journal article, newsletter, blueprint, drawing, design, sketch, book, text book, brochures, laboratory records, audio or video tape, record, recording, photograph, moving picture, negatives, calendars, diaries, messages or logs of telephone calls, facsimile transmissions (including cover sheets and confirmations), sales, advertising or promotional literature or materials, and any other object containing a written, printed, spoken or photographic image or sound.

In addition, the term "document" includes "electronic data," which means the original and any non-identical copies and drafts of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or remarks, program change logs and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems,

- 2 -

1  source code of all types, programming languages, linkers and compilers, peripheral drivers, PRF files,

2  ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which

3  they reside and regardless of whether said electronic data consists in an active, deleted file or file

4  fragment. Electronic data includes any and all items stored on computer memories or computer chips,

5  including, but not limited to, EPROM, PROM, RAM and ROM, hard disks, floppy disks, CD-ROM,

6  Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media or any

7  other vehicle for digital data storage and/or transmittal. The term includes all Electronic Bulletin Board

8  Services, including all levels of access, sub-boards, conferences and all information contained therein.

9        4.       "COMMUNICATE" or "COMMUNICATIONS" means and includes every manner of

10  disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face,

11  by telephone, e-mail, mail, facsimile, personal delivery, overnight delivery, or otherwise.

12        5.       "YOU," "YOUR," "EMC," or "DEFENDANT" shall refer to EMC Mortgage

13  Corporation including but not limited to its employees, officers, directors, contractors, agents,

14  successors and assigns.

15        6.       "SERVICER" or "SERVICED," OR "SERVICING" shall mean receiving any payments

16  from (or for) a residential real estate mortgage loan customer pursuant to the terms of any loan,

17  including amounts for escrow accounts, and making the payments of principal and interest and such

18  other payments with respect to the amounts received from (or for) the customer as may be required

19
20  pursuant to the terms of the loan. "SERVICING" shall also include any related loan servicing activity

21  such as the administration of loan accounts, sending periodic billing statements to a consumer,

22  maintaining records of the status of the customer's loan accounts, providing information to and

23  resolving disputes with the customer regarding loan accounts, collecting loan payments, foreclosing on

24  real property, furnishing information to consumer reporting agencies, and collecting or imposing fees

25  in relation to any of the foregoing.

26        7.       "CUSTOMER" or "CUSTOMERS" means a PERSON who has had a residential real

27  estate mortgage loan that has been SERVICED by YOU.

28

- 3 -

8. "MORTGAGE LOAN MODIFICATION" means any modification (whether actual, requested OR proposed, and whether trial, temporary, or permanent) of the material terms of a residential real estate mortgage loan SERVICED by YOU.

9. "FTC ORDER" means the Stipulated Final Judgment and Order filed on or about September 9, 2008 in the case entitled *Federal Trade Commission v. EMC Mortgage Corporation, et al.*, Case No. 4:08-cv-338, U.S.D.C, N. Dist. Texas.

10. "WILCOX LOAN" shall refer to the residential mortgage loan serviced by YOU for which PLAINTIFF Jean Wilcox is the borrower, secured by the property located at 5 Bamboo, Irvine, CA 92620.

11. "PLAINTIFF" shall refer to Jean Wilcox, including her successors, assigns, and agents.

12. "RELATE" or "RELATING" means all information that constitutes, evidences, explicitly or implicitly refers to, discusses, evaluates, considers, reviews, reports on, or was created as a result of, the subject matter of the request.

13. "OR" means "and/or" and shall be given the most inclusive meaning possible.

14. "AND" means "and/or" and shall be given the most inclusive meaning possible.

15. The use of the singular shall be deemed to include the plural, and vice versa; and the use of one gender shall include the other, as appropriate in the context.

### INSTRUCTIONS

In producing documents and other materials, YOU are to furnish all documents or things in YOUR possession, custody or control, regardless of whether such documents or materials are possessed directly by YOU or YOUR agents, employees, representatives, managing agents, affiliates, investigators.

In producing documents, YOU are requested to produce the original of each document requested, together with all non-identical copies and drafts of such document. If the original of any document cannot be located, a copy shall be produced in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

1   If any requested document or thing cannot be produced in full, YOU are to produce it to the

2   extent possible, indicating which document, or portion of such document, is being withheld, and the

3   reason that document is being withheld.

4   Documents not otherwise responsive to this Document Request shall be produced if such

5   documents mention, discuss, refer to, or explain the documents that are called for by these Document

6   Requests, or if such documents are attached to documents called for by these Document Requests and

7   constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations or similar

8   materials.

9   All documents shall be produced in the same order as they are kept or maintained by defendant

10  in the ordinary course of business.

11  All documents shall be produced in the file folder, envelope or other container in which the

12  documents are kept or maintained by defendant.  If, for any reason, the container cannot be produced,

13  produce copies of all labels or other identifying marks.

14  Documents shall be produced in such fashion as to identify the department, branch or office in

15  whose possession they were located and, where applicable, the natural person in whose possession they

16  were found and the business address of each document's custodian(s).

17  Documents attached to each other should not be separated.

18  If a document once existed and has subsequently been lost, destroyed, or is otherwise missing,

19  please provide sufficient information to identify the document and state the details concerning its loss.

20  If YOU claim the attorney-client privilege or any other privilege or work product protection for

21  any document, provide a detailed privilege log that contains at least the following information for each

22  document that has been withheld:

23  a.   state the date of the document;

24  b.   identify each and every author of the document;

1            c.     identify each and every person who prepared or participated in the

2                 preparation of the document;

3            d.     identify each and every person who received the document;

4            e.     identify each and every person from whom the document was

5                 received;

6            f.     state the present location of the document and all copies thereof;

7            g.     identify each and every person having custody or control of the

8                 document and copies thereof; and

9            h.     provide sufficient information concerning the document and the

10                 general subject matter thereof to explain the claim of privilege or

11                 protection and to permit the adjudication of the propriety of the

12                 claim.

### RELEVANT TIME PERIOD

14     Unless otherwise specified, the RELEVANT TIME PERIOD for this demand is for

15 DOCUMENTS created during and /or related to the period from January 1, 2007 to the present.

### DOCUMENT INSPECTION DEMANDS

17 **DEMAND NO. 1:**

18     All DOCUMENTS that constitute CUSTOMER complaints against YOU RELATING to

19 MORTGAGE LOAN MODIFICATIONS.

20 **DEMAND NO. 2:**

21

22     All DOCUMENTS that constitute legal complaints or claims in civil, criminal, administrative

or other proceedings against YOU by any governmental, regulatory, administrative, or law

23 enforcement agencies regarding MORTGAGE LOAN MODIFICATIONS.

24 **DEMAND NO. 3:**

25

26     All DOCUMENTS that constitute internal reports, analysis, summaries, OR studies of YOUR

27 handling of MORTGAGE LOAN MODIFICATIONS.

28

DEMAND FOR INSPECTION OF DOCUMENTS

X:\D\546-01\Discovery\Document requests Set 1.doc

**DEMAND NO. 4:**

DOCUMENTS sufficient to IDENTIFY the number of applications OR requests received by YOU for "trial" OR "temporary" MORTGAGE LOAN MODIFICATIONS for each of the past four years.

**DEMAND NO. 5:**

DOCUMENTS sufficient to IDENTIFY the number of applications OR requests approved by YOU for "trial" OR "temporary" MORTGAGE LOAN MODIFICATIONS for each of the past four years.

**DEMAND NO. 6:**

DOCUMENTS sufficient to IDENTIFY the number of applications OR requests received by YOU for permanent MORTGAGE LOAN MODIFICATIONS for each of the past four years.

**DEMAND NO. 7:**

DOCUMENTS sufficient to IDENTIFY the number of applications OR requests approved by YOU for permanent MORTGAGE LOAN MODIFICATIONS for each of the past four years.

**DEMAND NO. 8:**

All DOCUMENTS that constitute OR reflect YOUR criteria, policies AND procedures regarding MORTGAGE LOAN MODIFICATIONS, including but not limited to review, monitoring, rejection, AND approval of applications for  MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 9:**

All DOCUMENTS that RELATE TO any efforts by YOU to ensure that YOUR protocols, policies OR procedures for processing MORTGAGE LOAN MODIFICATIONS are followed.

**DEMAND NO. 10:**

All DOCUMENTS that constitute, refer to OR reflect YOUR training OR instruction for employees regarding handling MORTGAGE LOAN MODIFICATIONS, including but not limited to

X:\D\546-01\Discovery\Document requests Set 1.doc

instructional materials, training manuals, employee handbooks, telephone scripts OR talking points, memoranda, OR guidelines.

**DEMAND NO. 11:**

DOCUMENTS sufficient to IDENTIFY all revenues YOU have received from the SERVICING of residential real estate mortgage loans for each year during the past four years.

**DEMAND NO. 12:**

DOCUMENTS sufficient to IDENTIFY all revenues YOU have received from SERVICING residential real estate mortgage loans being handled under the terms of "trial" or temporary MORTGAGE LOAN MODIFICATIONS for each year during the past four years.

**DEMAND NO. 13:**

DOCUMENTS sufficient to IDENTIFY all revenues YOU have received from SERVICING residential real estate mortgage loans being handled under the terms of permanent MORTGAGE LOAN MODIFICATIONS for each year during the past four years.

**DEMAND NO. 14:**

DOCUMENTS sufficient to IDENTIFY all fees or other revenues paid to YOU by investors or lenders for SERVICING residential real estate mortgage loans, specifically including the WILCOX LOAN.

**DEMAND NO. 15:**

Documents sufficient to IDENTIFY the fees YOU charge investors or lenders for SERVICING a residential real estate mortgage loan that 1) is in distress (i.e, that is delinquent, is in default, or is in foreclosure); and 2) is not in distress.

**DEMAND NO. 16:**

All DOCUMENTS that constitute or RELATE TO notices of violations, notices of proposed action, orders and stipulations, business practices investigation reports, complaints, OR other DOCUMENTS received by YOU from the United States Federal Trade Commission relating to MORTGAGE LOAN MODIFICATIONS, from the date of the FTC ORDER forward.

**DEMAND NO. 17:**

All COMMUNICATIONS with representatives of the United States Department of the Treasury (OR any department OR division thereof) that reference MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 18:**

All COMMUNICATIONS with representatives of the United States Federal Trade Commission (OR any department OR division thereof) that refer to OR reflect MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 19:**

All DOCUMENTS that RELATE TO any actions taken by YOU in connection with failure by YOUR employees or agents to follow YOUR protocols, policies, OR procedures for MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 20:**

All DOCUMENTS that identify or summarize the results of investigations YOU have undertaken (other than your attorneys) regarding MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 21:**

DOCUMENTS sufficient to IDENTIFY electronically-stored information, including computerized databases, RELATING TO methods for identifying CUSTOMERS, including any DOCUMENTS that IDENTIFY the system, the types of categories of information stored in each system, the back-up and retention program for each system, and the reports generated by each system.

**DEMAND NO. 22:**

All DOCUMENTS produced to governmental, regulatory, administrative, or law enforcement agencies in connection with any civil, criminal, administrative or other claim, complaint, lawsuit, administrative proceeding, or investigation regarding MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 23:**

Organizational charts OR other DOCUMENTS sufficient to IDENTIFY all of YOUR officers, directors, managers OR employees involved in MORTGAGE LOAN MODIFICATIONS, all of

- 9 -

1  YOUR office locations involved in MORTGAGE LOAN MODIFICATIONS, AND all of YOUR

2  divisions OR departments involved in MORTGAGE LOAN MODIFICATIONS

3  **DEMAND NO. 24:**

4      Organizational charts OR other DOCUMENTS sufficient to IDENTIFY YOUR officers,

5  directors, managers OR employees who are qualified to testify about the protocols or procedures

6  concerning MORTGAGE LOAN MODIFICATIONS.

7

8  **DEMAND NO. 25:**

9      DOCUMENTS SUFFICIENT to IDENTIFY all revenues received by YOU in connection with

10  MORTGAGE LOAN MODIFICATIONS that have occurred as a result of programs sponsored by the

11  United States government, including but not limited to the Home Affordable Modification Program

12  ("H.A.M.P.").

13  **DEMAND NO. 26:**

14      DOCUMENTS SUFFICIENT to IDENTIFY all revenues paid to YOU by the United States

15  Government, specifically including the Treasury Department, pursuant to the Home Affordable

16  Modification Program ("H.A.M.P.").

17

18  **DEMAND NO. 27:**

19      DOCUMENTS sufficient to IDENTIFY the total number of "trial" or temporary MORTGAGE

20  LOAN MODIFICATIONS YOU have granted for each of the past 4 years.

21  **DEMAND NO. 28:**

22      DOCUMENTS sufficient to IDENTIFY the total number of permanent MORTGAGE LOAN

23  MODIFICATIONS YOU have granted for each of the past 4 years.

24  **DEMAND NO. 29:**

25      All DOCUMENTS constituting or referring to policies, procedures, OR legal guidance relating

26  to YOUR compliance with the Home Affordable Modification Program ("H.A.M.P.").

27

28

**DEMAND NO. 30:**

All DOCUMENTS constituting or referencing YOUR statistical performance (including your activities and efforts in compliance or non-compliance) under the Home Affordable Modification Program ("H.A.M.P.").

**DEMAND NO. 31:**

All DOCUMENTS that constitute, refer to OR RELATE to YOUR compliance OR lack thereof with the FTC ORDER.

**DEMAND NO. 32:**

DOCUMENTS sufficient to IDENTIFY all employees designated to coordinate or be accountable for the data integrity program as referred to in Section VII of the FTC ORDER.

**DEMAND NO. 33:**

All DOCUMENTS that constitute OR RELATE to the testing or monitoring of the effectiveness of the data integrity program as referred to in Section VII of the FTC ORDER.

**DEMAND NO. 34:**

All DOCUMENTS that constitute OR RELATE to the evaluation AND adjustment of the data integrity program in light of the results of the testing and monitoring required by subparagraph VII.B of the FTC ORDER, OR any other circumstances that YOU know or have reason to know may have a material impact on the effectiveness of the data integrity program.

**DEMAND NO. 35:**

All DOCUMENTS that constitute the initial "assessment and report," plus the subsequent 6 month and 2 year reports, AND all other plans, reports, studies, reviews, audits, audit trails, policies, and subsequent biennial assessments, as referenced in Section VIII and Section XIII of the FTC ORDER.

**DEMAND NO. 36:**

All DOCUMENTS provided to the United States Federal Trade Commission pursuant to Section XII of the FTC ORDER.

**DEMAND NO. 37:**

All DOCUMENTS constituting notifications provided to the United States Federal Trade Commission pursuant to Section XIII.A of the FTC ORDER.

**DEMAND NO. 38:**

All DOCUMENTS constituting written reports provided to the United States Federal Trade Commission pursuant to Section XIII.B of the FTC ORDER.

**DEMAND NO. 39:**

All DOCUMENTS constituting acknowledgment of receipt by YOU (including YOUR employees) of the FTC ORDER, including all signed statements "acknowledging receipt of order" under section XV.B of the FTC ORDER.

**DEMAND NO. 40:**

All DOCUMENTS YOU provided to the FTC in 2008, 2009 & 2010 which list former EMC employees.

**DEMAND NO. 41:**

All COMMUNICATONS between YOU and Pentalpha (the assessor under the FTC ORDER) RELATING to the FTC ORDER (See, Section VIII).

**DEMAND NO. 42:**

All DOCUMENTS exchanged between Pentalpha (the assessor under the FTC ORDER) and YOU or the FTC RELATING to the FTC ORDER.

**DEMAND NO. 43:**

All complaints and disputes lodged by consumers that YOU have maintained pursuant to Section XIV of the FTC ORDER.

DEMAND FOR INSPECTION OF DOCUMENTS

X:\D\546-01\Discovery\Document requests Set 1.doc

**DEMAND NO. 44:**

All DOCUMENTS containing testimony (whether via declaration, affidavit, deposition, transcript, or other method of testimony) provided by any witnesses concerning the FTC ORDER or any of the allegations resulting in the FTC ORDER.

**DEMAND NO. 45:**

Copies of all transcripts of depositions AND examinations under oath in any civil, administrative or other proceedings against YOU OR investigations against YOU by any governmental, regulatory, administrative, or law enforcement agencies regarding MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 46:**

Copies of all transcripts of testimony at any hearing in any civil, administrative, or other proceedings against YOU OR investigations against YOU by governmental, regulatory, administrative, or law enforcement agencies regarding MORTGAGE LOAN MODIFICATIONS.

**DEMAND NO. 47:**

All polices of insurance OR indemnification that may provide coverage, defense, OR indemnity for claims alleged in this lawsuit, whether or not there has been a reservation of rights.

**DEMAND NO. 48:**

All DOCUMENTS that constitute YOUR policies OR procedures for DOCUMENT retention AND destruction, including any DOCUMENTS that reflect or RELATE TO such policies being suspended, not enforced, or held in abeyance.

**DEMAND NO. 49:**

YOUR entire loan file for the WILCOX LOAN (including all of your servicing notes, telephone logs, and internal memoranda RELATING to the WILCOX LOAN and YOUR attempted foreclosure on the Wilcox home).

**DEMAND NO. 50:**

All DOCUMENTS reflecting payments tendered by Wilcox and credits / debits applied on the WILCOX LOAN, including escrow payment history, suspense account activity, and loan balances.

**DEMAND NO. 51:**

All COMMUNICATIONS with PLAINTIFF.

**DEMAND NO. 52:**

All DOCUMENTS referencing PLAINTIFF.

**DEMAND NO. 53:**

DOCUMENTS sufficient to IDENTIFY the investor and/or investment group who retained you to SERVICE the WILCOX LOAN, including the trustee or other agent authorized to manage or conduct business on behalf of such investor(s).

**DEMAND NO. 54:**

DOCUMENTS sufficient to IDENTIFY all investors and investment groups identified as beneficiaries or mortgagees on the WILCOX LOAN during the time you serviced the WILCOX LOAN, including the trustees and agents authorized to manage or conduct business on behalf of such investors.

**DEMAND NO. 55:**

The pooling & servicing agreement governing YOUR SERVICING of the WILCOX LOAN.

**DEMAND NO. 56:**

The pooling & servicing agreement pursuant to which you SERVICE mortgage loans for Chase Bank or J.P. Morgan Chase & Co.

**DEMAND NO. 57:**

The pooling & servicing agreement pursuant to which you SERVICE mortgage loans for Washington Mutual Bank ("WAMU"), including any successor in interest to WAMU.

DEMAND FOR INSPECTION OF DOCUMENTS
X:\D\546-01\Discovery\Document requests Set 1.doc

1 | **DEMAND NO. 58:**

2 |     All DOCUMENTS pursuant to which you claim you were authorized to initiate foreclosure

3 | proceeding, or to hire others to proceed with foreclosure activities, on the WILCOX LOAN or against

4 | the home owned by Jean Wilcox, including recordation of an NOD against such home.

5 |

6 |                                       LANZA & SMITH, PLC

7 | DATED: October 29, 2010          By: _____

8 |                                      Brodie H. Smith

                                    LANZA & SMITH, P.C.

9 |                                     3 Park Plaza, # 1650

                                    Irvine, CA 92614-8540

10 |                                     Tel: (949) 221-0490

                                    Fax: (949) 221-0027

11 |

12 |                                     Thomas D. Mauriello, Esq.

13 |                                     MAURIELLO LAW FIRM, APC

                                    1181 Puerta Del Sol, Suite 120

14 |                                     San Clemente CA 92673

                                    Tel: (949) 542-3555

15 |                                     Fax: (949) 606-9690

                                    Email: tomm@maurlaw.com

16 |                                     **Attorneys for Plaintiff Jean C. Wilcox**

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

DEMAND FOR INSPECTION OF DOCUMENTS

X:\D\546-01\Discovery\Document requests Set 1.doc

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE – CIVIL COMPLEX

3

4

I am a citizen of the United States, over the age of 18 years, employed in the County of Orange
in the office of a member of the State Bar at whose direction service was made. I am not a party to the
within action. My business address is 3 Park Plaza, Suite 1650, Irvine, CA, 92614.

5

6

On **October 29, 2010,** I served the following documents **DEMAND FOR INSPECTION OF
DOCUMENTS (SET ONE),** on the interested parties in
this action by placing the original thereof enclosed in a sealed envelope addressed as follows:

7

8

Wendy M. Garbers, Esq.                      *Counsel for Defendant EMC Mortgage Corp.*
Morrison & Foerster LLP

9

425 Market Street
San Francisco, CA  94105-2482

10

11

EMC Mortgage Corporation                    *Agent for Service of Process for*
c/o CT Corporation System                   *EMC Mortgage Corp.*
818 W. 7th Street

12

Los Angeles, CA  90017

13

14

Tom Mauriello, Esq.                         *Co-Counsel for Plaintiff Jean Wilcox*
Mauriello Law Firm, APC

15.

1181 Puerta Del Sol, Suite 120
San Clemente CA 92673

16

17

____**X**____   **BY MAIL:** I caused such envelopes (with postage thereon fully prepaid) to be placed in
the United States mail at Irvine, California. I am readily familiar with this firm's practice of collection

18

and processing correspondence for mailing. It is deposited with the United States Postal Service on that
same day in the ordinary course of business. I am aware that on motion of parties served, service is

19

presumed invalid if postal cancellation date or postage meter date is more than one day after date of

20

deposition for mailing specified in the affidavit.

21

_____   **BY E-MAIL:** I caused the above documents to be served by e-mail to the offices of the
addressee(s).

22

23

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

24

25

Executed **October 29, 2010,** at Irvine, California.

26

_____
Leona Smialek

27

28

1
*PROOF OF SERVICE*

X:\D\546-01\Pleadings\POS.doc

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482
TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522
WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

March 3, 2011

Writer's Direct Contact
415.268.7466
RLin@mofo.com

*Via UPS Overnight Mail*

Erika Maria Penaloza
1150 N. Kirby Street, Space No. 15
Hemet, CA 92545

Re:     *Durmic, et al v. J. P. Morgan Chase Bank N.A.*, Case No. 10-cv-10380-RGS

Dear Ms. Penaloza:

I write to follow up on the voice mail that I left you last Friday, February 25. As I mentioned
in my voice mail, I am an attorney at Morrison & Foerster LLP. We represent Chase in the
*Durmic et al. v. JPMorgan Chase Bank, N.A. et al.* case. We understand that plaintiffs have
scheduled you for deposition testimony next week on March 11, 2011 at 10:00 a.m., pursuant
to a subpoena. We are contacting you directly because we are not aware that you have
retained your own attorney for that testimony. If you have indeed retained your own
attorney, please let us know, and we will contact that person instead.

We understand that you have been in touch with plaintiffs' counsel regarding the planned
subjects of your testimony. We would appreciate the same opportunity to speak to you.
Could you please call me back at 415-268-7466 at your earliest convenience? I am happy to
make myself available to speak whenever is convenient for you, including in the evening. If
I am not at my desk when you call, please just let me know when would be convenient to
speak, and I will try to call you then. You should also feel free to call me via a collect call,
so that you do not need to incur long-distance charges.

We would appreciate the opportunity to speak with you not only as a courtesy, but also in
light of your obligations under your employment agreement with Chase. When you came to
work for Chase, you signed an employment contract agreeing to comply with Chase's Code
of Conduct, which imposes an ongoing obligation after your employment has ended to assist
Chase with litigation relating to your employment there. In that contract, you also agreed to
comply with Chase's policies and procedures, which require that, after your employment
ends with Chase, you cooperate with Chase's counsel in litigation with which you are
involved or have knowledge as a result of your former employment at Chase.

sf-2964836

ExH. 5.

MORRISON | FOERSTER

Erika Maria Penaloza
March 3, 2011
Page Two

We look forward to speaking with you.

Best regards,

Rita Lin