Anthony Lanza, Esq. (SBN 156703)
Brodie H. Smith, Esq. (SBN 221877)
LANZA & SMITH, P.C.
3 Park Plaza, Suite 1650
Irvine, CA 92614-8540
Tel: (949) 221-0490
Fax: (949) 221-0027
Email: tony@lanzasmith.com
        brodie@lanzasmith.com

Thomas D. Mauriello, Esq. (SBN 144811)
MAURIELLO LAW FIRM, P.C.
1181 Puerta Del Sol, Suite 120
San Clemente CA 92673
Tel: (949) 542-3555
Fax: (949) 606-9690
Email: tomm@maurlaw.com

Attorneys for plaintiffs Jean C. Wilcox,
Michele Hood and Robert Hood, and Sharie Green

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JEAN C. WILCOX, MICHELE HOOD, ROBERT HOOD, and SHARIE GREEN, Individually and on Behalf of All Other Consumers Similarly Situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>EMC MORTGAGE CORPORATION, a Delaware corporation; J.P. MORGAN CHASE BANK, N.A., a Delaware corporation; DOES 1 through 100, inclusive;<br><br>            Defendants. | CASE NO. 8:10-CV-01923-CJC-RNB<br><br>PUTATIVE CLASS ACTION<br><br>[Hon. Cormac J. Carney]<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:        May 16, 2011<br>Time:        1:30 p.m.<br>Courtroom:   9B<br>Judge:       Hon. Cormac Carney |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.  PLAINTIFFS' MODIFICATION EXPERIENCES ................................................. 2

III. SUMMARY OF DEFENDANT'S MISCONDUCT ................................................. 3

IV.  THE COMPLAINT ADEQUATELY ALLEGES
     BREACH OF CONTRACT ................................................................. 6

     A.  The Contracts Established Obligations That
         Defendants Failed to Meet ........................................................... 7

         1.  *The TPPs require timely and legitimate decisions - not a pretext* ............... 7

         2.  *HAMP Guidelines are non-essential to plaintiffs' contract claim* ............... 8

         3.  *The statute of frauds is not applicable* ..................................... 8

     B.  The TPP Agreements Do Not Lack Material Terms ....................................... 9

     C.  The Complaint Adequately Alleges Consideration ....................................... 11

V.   THE COMPLAINT ADEQUATELY ALLEGES THAT
     DEFENDANTS VIOLATED THE COVENANT OF GOOD
     FAITH AND FAIR DEALING ................................................................. 13

VI.  THE COMPLAINT SUFFICIENTLY ALLEGES PROMISSORY
     ESTOPPEL ................................................................. 16

     A.  The Complaint Alleges Clear, Unambiguous Promises ................................... 16

     B.  The Complaint Alleges Reliance and Detriment ....................................... 17

VII. THE COMPLAINT ADEQUATELY ALLEGES UCL VIOLATIONS ................................ 18

     A.  Plaintiffs Have Adequately Alleged Unlawful Business Practices ................... 18

     B.  Plaintiffs Have Adequately Alleged Unfair and Fraudulent
         Business Practices ................................................................. 20

     C.  Plaintiffs Have Adequately Alleged Injury ....................................... 22

VIII. THE COMPLAINT ADEQUATELY ALLEGES
      UNJUST ENRICHMENT ................................................................. 22

IX.  THE COMPLAINT ADEQUATELY ALLEGES FRAUD ....................................... 23

X.   THE COMPLAINT ADEQUATELY ALLEGES CLRA VIOLATIONS ............. 24

XI.  CONCLUSION ................................................................. 25

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4  *Aleem v. Bank of Am., N.A.*, No. 09-cv-01812-VAP (RZx),
   2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010)..................................................8

5  *Alexander v. Codemasters Group Limited*, 104 Cal. App. 4th 129, 141 (2002) ............. 9

6  *Anaya v. Advisors Lending Gp.*,
7    No. CV F 09-1191, 2009 U.S. Dist. LEXIS 68373 (E.D. Cal. Aug. 5, 2009)...............20

8  *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 490 (2010) ................22

9  *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 31-32 (2000).........................................................11

10 *Banco do Brasil*, 234 Cal. App. 3d 973 (1991)..............................................................11

11 *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ................................ 18

12 *Bosque v. Wells Fargo Bank*,
   2011 WL 304725 (D. Mass, Jan. 26, 2011) .....................................10, 14, 16, 18, 21, 22

13 *Brawley v. Crosby Research Found., Inc.*, 73 Cal. App. 2d 103, 112 (1946) ................ 13

14

15 *Brookwood v. Bank of Am. Nat'l Trust & Sav. Ass'n.*
   53 Cal. Rptr. 2d 515, 520 (Ct. App. 1996).................................................................... 23

16

17 *Burgess v. Rodom*, 121 Cal. App. 2d 71, 74 (1953).........................................................11

18 *Cal. Lettuce Growers v. Union Sugar Co.*,
   45 Cal. 2d 474, 482 (1955)..............................................................................................9

19 *Cartwright v. Viking Industries*, 249 FRD 351, 357 (E.D. Cal. 2008) ........................... 25

20 *Carver v. Teitsworth*, 1 Cal. App. 4th 845, 853 (1991) ............................................. 9, 10

21 *Careau & Co. v. Security Pacific Business Credit, Inc.*,
22   222 Cal. App. 3d 1371, 1394 (1990)............................................................................. 15

23 *Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ............ 19

24 *Collins v. Marvel Land Co.,*19 Cal.Rptr. 291, 296 (Ct. App. 1970)................................ 8

25 *Connors v. Home Loan Corp.*, No. 08-CV-1134-L (LSP),
   2009 U.S. Dist. LEXIS 48638 (S.D. Cal. June 9, 2009)................................................ 20

26 *CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
27   479 F.3d 1099, 1107 (9th Cir. 2007)............................................................................. 19

28 *Darcy v. CitiFinancial*, 1:10-CV-848 (W.D. Mich., Mar. 1, 2011) ............................... 10

i

*Dooms v. Fed. Home Loan Mortg. Corp.* No. CVF 11-0352,
2011 U.S. Dist. LEXIS 38550 (E.D. Cal. Mar. 31, 2011) ............................ 8

*Durmic v. JP Morgan Chase Bank*, 2010 WL 4825632
(D. Mass. Nov. 24, 2010) ............................................10, 12, 16, 18, 21, 22

*Elite Show Services, Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 269 (2004) ............... 9

*Farner v. Countrywide Home Loans*, No. 08-CV-2193,
2009 U.S. Dist. LEXIS 5303, (S.D. Cal. Jan. 26, 2009) ............................... 20

*Faulkner v. Onewest Bank*, 2010 WL 2472275 *9-10
(N.D. W. Va. June 16, 2010) ........................................................................ 10

*Garcia v. World Savings,* 107 Cal.Rptr.3d 683 (2010) ................................... 9, 17

*Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ................ 22

*Glen Holly Ent'mt, Inc. v. Tektronix, Inc.*,
100 F. Supp. 2d 1086, 1101 (C.D. Cal. 1999) .............................................. 16

*Grill v. BAC Home Loans Servicing LP*, No. 2:10-CV-03057-FCD/GGH,
2011 U.S. Dist. LEXIS 3771 (E.D. Cal. Jan. 14, 2011) ............................... 17

*Hardy v. IndyMac Fed. Bank*, 263 F.R.D. 586, 592 (E.D. Cal. 2009) ........................ 10

*Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960) ........................................... 14

*Hernandez v. Hilltop* ................................................................................. 24, 25

*Hernandez v. Sutter West Capital,*
2010 WL 539133 at 4 (N.D. Cal., Feb. 8, 2010) ...................................... 24, 25

*Hirsch v. Bank of America,* 107 Cal.App.4th 708, 722 (2003) ........................... 22

*House v. Lala*, 214 Cal. App. 2d 238, 243 (1963) ) ........................................ 11

*Hunter v. General Motors*, 2007 WL 4100084 * 10 (Nov. 19, 2007) ..................... 19

*Jackson v. OCWEN Loan Serving*, 2-10-CV-00711-MCE ,
U.S. Dist, E. Dist., Cal. (Feb. 9, 2011) ............................................. 10, 14, 16

*K.F. Diaries & Affiliates,* 224 F.3rd 922, 924 (9th Cir. 2000) ........................... 25

*Kasky v. Nike, Inc.*, 27 Cal.4th 163, 950 (2002) ............................................ 19

*Kessler v. Sapp*, 338 P.2d 34, 37 (1959) .................................................... 11

*King v. CitiMortgage*, CV-10-03792-DSF (USDC, Cal. 2011). .............. 10, 14, 16, 21

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003) ............... 19

*Kwikset v. Superior Court,* 51 Cal. 4th 310 (Jan. 2011) ................................ 22

*Labrador v. Seattle Mtg. Co.*, 2008 WL 4775239 at 5 (N.D. Cal., Oct. 29, 2008), . 24, 25

*Laks v. Coast Fed. Sav. & Loan Assn.*, 131 Cal. Rptr. 3d 836 (1976)............................. 16

*Lippitt v. Raymond James Fin. Serv.*, 340 F.3d 1033, 1043 (9th Cir. 2003) ................... 20

*Locke v. Wells Fargo Home Mortgage*, No. 10-60286,
   2010 U.S. Dist. LEXIS 126140 (S.D. Fla. Nov. 30, 2010) ). ....................................... 17

*Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3rd 718, 738 (9th Cir. 2007) ............... 20, 21

*Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308, 313 (C.D. Cal. 1994).................... 19

*Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980).............................. 21

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100-02 (N.D. Cal. 2006).......... 22

*Pantoja v. Countrywide Home Loans, Inc.,*
   640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009) ............................................................. 20

*Pitmann v. Barclays Capital Real Estate, Inc.,*
   No. 09-CV 0241 JM (AJB), 2009 WL 1108889 (S.D. Cal. Apr. 24, 2009)................. 19

*Prasad v. BAC Home Loans Servicing*, No. 2:10-CV-2343-FCD/KJN,
   2010 U.S. Dist. LEXIS 133938 (E.D. Cal. Dec. 7, 2010) ........................................... 17

*Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 672-674 (1974)............. 12, 16

*Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 409-410 (1973)......................... 9

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
   72 Cal. App. 4th 861, 877 (1999)................................................................................. 18

*Sanders v. 12 Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986) ) ......................................... 17

*Smith v. State Farm,* 93 Cal. App. 4th 700, 718 (2001).................................................. 20

*Southern Pacific v. Santa Fe,* 74 Cal. App. 4th 1232, 1240, 1241 (1999) ....................... 9

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,*
   100 Cal. App. 4th 44, 55 ............................................................................................. 14

*Torres v. Litton,* No. 10-CV-01709-OWW-SKO,
   Docket No. 26 (E.D. Cal, April 13, 2011) ................................................................... 14

*Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d 495, 498 (9th Cir. 1953)....... 22

*Wigod v. Wells Fargo Bank, N.A.*, No. 10-cv-2348,
   2011 U.S. Dist. LEXIS 7314 (N.D. Ill. Jan. 25, 2011) ............................................... 17

*Williams v. Geithner*, 2009 WL 3757380 (D. Minn. Nov. 9, 2009)................................ 10

*Yazdanpanah v. Sacramento Valley Mortg. Grp.*, No. C 09-02024, 2009 U.S. Dist.
   LEXIS 111557(N.D. Cal. Dec. 1, 2009) ...................................................................... 24

**Statutes & Other Authorities**

Business and Professions Code § 17200 ........................................................................ 20

**Cal. Civ. Code**

Civil Code section 1760 ...........................................................................................25

Civil Code Section 1770(a) ......................................................................................24

Code Civ. Proc. §1972 .............................................................................................. 9

Civil Code § 1856(c) ............................................................................................ 8, 9

Civil Code section 2923.6(b) ..................................................................................21

HAMP Supplemental Directives, NPV Model Overview, and FAQs available online
  at https://www.hmpadmin.com/portal/programs/hamp/servicer.html) .......................... 3

## I.   INTRODUCTION

Defendants EMC and Chase (collectively, "Chase") are in the business of servicing mortgage loans.  This case involves Chase's business practice of inducing consumers to continue making mortgage payments in pursuit of ***illusory*** permanent loan modifications, which are virtually ***never*** granted, through the following means:

i. misrepresenting the requirements for achieving permanent loan modifications and the status of loan modification applications;

ii. accepting interim debtor payments for promised permanent loan modifications under temporary modification or Trial Period Plan contracts ("TPPs") without reasonable basis to believe modifications would be granted and without taking reasonable steps to perform under the TPPs;

iii. systematically erecting obstacles in the loan modification process such as repeatedly losing borrower documents, rotating personnel, and altering requirements, to obstruct and delay permanent loan modifications; and

iv. instructing loan modification applicants to stop making mortgage payments, subjecting them to risks of foreclosure, late fees, increased interest and debt obligations, and negative credit reporting;

These practices have allowed Chase to maintain and increase its ongoing revenues from debtors, even on distressed loans, without the need to liquidate excessive and under-valued real estate inventory.  Chase also has increased profits through escalated loan servicing fees charged for "distressed loans," as well as default penalties and late fees.  Finally, Chase's practices artificially bolstered its financial statements by avoiding or minimizing reporting of distressed loans.[1]

---

[1] Some of the incentives for these actions are described in the article *Why Servicers Foreclose When they Should Modify and Other Puzzles of Servicer Behavior*, Dianne E. Thompson, National Consumer Law Center, Inc., October 2009, Executive Summary, Pages vi & viii (Attached as Exhibit 1 to the Declaration of Brodie Smith filed herewith): "The monthly fee that the servicer receives based on a percentage of the outstanding principal of the loans in the pool provides some incentive to servicers to keep loans in the pool rather than foreclosing on them, but also provides a significant disincentive to offer principal reductions or other loan modifications that are sustainable on the long term. Fees that servicers charge borrowers in default reward servicers for getting and keeping a borrower in default. As they grow, these fees make a modification less and less feasible."

- 1 -

1      Defendants' scheme -- stringing along homeowners who desperately need
2   financial relief, while ultimately failing to provide them with promised permanent loan
3   modifications -- has been aptly characterized as a scheme of *"extend & pretend."*

4   **II.    PLAINTIFFS' MODIFICATION EXPERIENCES**

5      In 2007, plaintiff Jean Wilcox began experiencing financial difficulty in her solo
6   law practice. (SAC ¶39.)  She contacted EMC for a loan modification.  EMC issued a
7   trial loan modification and promised to consider Wilcox, *in good faith*, for a permanent
8   modification if she complied with the trial modification plan. (SAC ¶42.)  EMC advised
9   her to stop making payments on her credit cards.  After Wilcox made the first payment
10  under the trial plan, EMC claimed that it had "no record" of her modification request.
11  (SAC ¶44.)  EMC enrolled Wilcox in a second trial modification plan (SAC ¶45) but
12  then erroneously referred Wilcox's loan to a trustee for foreclosure.  Over the next 14
13  months, Wilcox worked diligently to correct EMC's mistakes. (SAC ¶¶48-65.)
14  Meanwhile, EMC continued to demand trial modification payments from Wilcox, while
15  failing to render a decision on a permanent modification.  Through 2009 and 2010, EMC
16  offered Wilcox two more trial plans. (SAC ¶¶66-92.)  EMC denied a permanent
17  modification, incorrectly citing failure to meet certain internal debt-to-income ratios.
18  After 4 years of coaxing additional payments from Wilcox, it became apparent that
19  EMC never intended to consider her request in good faith.

20      Michelle and Robert Hood sought modification after Michele' work hours and
21  wages were reduced.  (SAC ¶96.)  At Chase's advice, the Hoods became delinquent on
22  their mortgage payments as a prerequisite for loan modification.  (SAC ¶97.)  Over the
23  next two years, Chase induced the Hoods to make dozens of payments under trial
24  modification plans.  In each case, Chase wrongfully declined to grant a permanent
25  modification, claiming that the Hoods' application documents had expired, leading to an
26  endless loop of trial modifications.  EMC ultimately offered a modification with
27  payments $2,400 **higher** than Hood's original mortgage, which was obviously in bad
28  faith, and which Defendants knew the Hoods would reject.

1    Sharie Green is an adjunct faculty member of the University of Phoenix. (SAC
2  ¶116, 117.) In February, 2008, she was diagnosed with a spinal auto immune disorder
3  and was forced to cut back on her work hours, which led her to seek a loan modification.
4  (SAC ¶116.)   Green made payments under a trial modification plan for 12 months until
5  Chase told her that she was not approved for a permanent modification. (SAC ¶118-
6  121.)   A second trial modification plan ended in the same way eight months later with
7  Chase denying a permanent modification, refusing to disclose why.  In the meantime,
8  Chase reported Green as delinquent to credit reporting agencies, although she had made
9  all her plan payments in a timely manner (SAC ¶126), thus ensuring that she had no
10 other viable option than to continue participating in illusory "trial plans."  After a third
11 trial plan, Chase wrongfully denied a modification, falsely citing her failure to provide
12 requested documentation – although Green had a Federal Express delivery confirmation
13 proving delivery.  Chase never intended to consider Green, in *good faith*, for a
14 permanent modification.

## III.   SUMMARY OF DEFENDANT'S MISCONDUCT

16    Plaintiffs and members of the proposed class executed agreements with
17 defendants with binding language.  Defendants offered plaintiffs TPPs providing:

18     "If I am in compliance with this Trial Period Plan … and my
19     representations in Section 1 continue to be true in all material respects, then
       the Lender **will** provide me with a Home Affordable Modification
20     Agreement  …" (MTD, Exh. 4, emphasis added.)

21    Under HAMP rules, Chase was required to collect income information, check
22 investor guidelines, create proposed modification terms, and perform a Net Present
23 Value test *before* it offered the TPP Contract. (SAC ¶¶ 27-29; Supplemental Directive
24 ("SD") 09-01 at 1-9, NPV Model Overview; Supplemental Documentation FAQ
25 ("FAQ") 2314[2]).

---

27 [2] The Supplemental Directives and other HAMP Program Documentation are incorporated into the
   SPA by reference.  (SAC ¶ 33) The HAMP Supplemental Directives, NPV Model Overview, and
28 FAQs are available online at https://www.hmpadmin.com/portal/programs/hamp/servicer.html.

1      The TPP Contract placed only two requirements on borrowers to obtain a
2  permanent loan modification: one, that they make specified monthly payments; two, that
3  they provide documentation to verify their reported income.   (TPP Contact ¶3, Exh. 4 to
4  Decl. of Shari Middlebrooks.)  This promise is identical to that being made by Chase to
5  consumers and to the public **to this day**.[3]

6      Plaintiffs complied with their obligations under the TPP Contracts.  First, they
7  provided the requisite documents to permit verification of their income (which Chase
8  had used to find them eligible for HAMP and offer them the TPP Contract). (SAC ¶¶ 52,
9  53, 58, 76, 81, and 94; TPP § 1.D, E, SD 09-01 at 5, 15; SD 09-07 at 1, 2, 7.)  Second,
10  they made all the required payments for the trial period. (SAC ¶¶ 81, 116, 120; TPP §
11  3.) Despite delivering on their end of the bargain, none of the plaintiffs were timely
12  offered a permanent modification at the end of the trial period.

13      Plaintiffs' experience, along with Chase's dismal track record for completing loan
14  modifications, demonstrates that Chase systematically breaches it obligations.  In
15  January 2010, the U.S. Treasury reported that, of 424,965 HAMP-eligible loans in
16  Chase's portfolio, just 7,139 -- *approximately 1.7%* -- resulted in permanent
17  modifications, although many more homeowners provided the required payments and
18  documentation under their TPP Agreements.  (SAC ¶31.)

19      Plaintiffs' claims are corroborated by former Chase employees Erika Penaloza,
20  Janet Moynihan, and Cindy Walker, whose declarations confirm defendants' fraudulent

21

22  [3]As of April 21, 2011, Chase's website confirmed that if the documents submitted verified the financial
information and if the trial payments were made, a permanent modification would be granted:

23

24       Step 4 - Final Modification Agreement

        *If you successfully make your payments during your trial period, and the*
25       *documentation you provided supports the home retention specialist's initial review, we*
        *will approve your request and your loan modification will become permanent.* Once
26       we receive the signed final document, we'll conduct a final review. This review may
        take up to 30 days. Once we complete this review, the loan modification will be final.

27

    https://www.chase.com/chf/mortgage/hrm_loanmodification (Emphasis added.)(A true and correct
28  copy of the website screen is attached as Exhibit 4 to the Declaration of Brodie Smith.)

1  loan modification practices.[4]  These witnesses, who were employed in Defendant's San

2  Diego office primarily in the loss mitigation department, testified, *inter alia*:

3  > In my experience, Chase was committed to delaying, obstructing or
4  > denying permanent loan modifications for its borrowers, including
   > those whose loans were serviced by EMC.   This policy was
5  > implemented through a variety of tactics, including the following:  . . .
6  > a. Document Shuffle; b. Deceive Callers; c. Poor Hiring & Training;
   > d. Rotate Assignments; e. Red Tape." *See* Penoloza Decl., ¶5.

7

8  > Employees were instructed to deceive borrowers in discussing loan
   > modification applications – including their status and the prospects for
9  > obtaining permanent loan modifications.  Management at Chase . . .
10 > instructed employees to tell borrowers that 1) their loan mod
   > applications were still "in process," even when they were actually
11 > dead or hopeless; and 2) documents had not yet been received, or were
12 > incomplete, even though this was false.  . . . In fact, even during a few
   > months when Chase imposed a freeze on loan mods, management told
13 > me and other employees to deceive borrowers by claiming that their
14 > loans were still being processed, when this was false.  *See* Walker
   > Decl., ¶5(i).

15

16 > Employees  . . .  often joked that the loan modification or loss
   > mitigation department was a "ferris wheel" or a "merry-go-round."
17 > This was because loan modification applicants were forced through
18 > repeating cycles of delays, lost documents, red tape, and rotating
   > personnel. Borrowers were seldom able to avoid going around and
19 > around in circles, rarely achieving the permanent loan modifications
20 > they sought. *See* Moynihan Decl., ¶8.

21 > Chase management . . .  trained employees to delay and encumber the
22 > loan modification process. It was clear during my employment at
   > Chase that the company's "ferris wheel" system was used to delay,
23 > obstruct, and reject loan modification applications.    Chase
24 > management encouraged this. *See,* Moynihan Decl., ¶6.

25 > Employees in the Rancho Bernardo office commonly joked that a

26 ---

[4] Plaintiffs request that the Court take judicial notice of these three declarations, which were quoted in
27 Plaintiffs' motion to compel filed in this Court on April 12, 2011, Civil Docket No. 16, identified as
Declaration of Erika Penaloza dated October 11, 2010 (Exhibit 6), Declaration of Janet Monyihan
28 dated December 21, 2010 (Exhibit 7), and Declaration of Cindy Walker dated November 29, 2010
(Exhibit 8).  One of these witnesses, Erika Penaloza, also confirmed this testimony pursuant to oral
deposition testimony in another lawsuit on March 11, 2011.

- 5 -

> document shredder was connected to the fax machine. . . . because borrower documents were constantly lost, misplaced, or destroyed by Chase. *See,* Moynihan Decl., ¶7.

Defendants brazenly assert that plaintiffs *benefited* from being stuck in trial modifications for months on end. To the contrary, plaintiffs suffered enormous detriment. Families, like businesses, need to be able to make rational financial decisions. Plaintiffs and members of the proposed class sacrificed other options when they entered the TPP Contracts. They remained in trial modifications for far longer than the three months they bargained for. In fact, many are still in limbo, uncertain week to week about what will happen to their homes and their futures. Others have been denied, and now face thousands or tens of thousands of dollars more debt than when they started. Some even face imminent foreclosure. Defendants' arguments to the contrary ignore Rule 12(b)(6) standards, which require this Court to accept all well-pled and plausible allegations as true.

Defendants' promise of a permanent loan modification, made without the intent or ability to timely deliver, is an unfair means of collecting revenues and an unfair business practice under California law.

## IV.   THE COMPLAINT ADEQUATELY ALLEGES BREACH OF CONTRACT

The MTD focuses on different contracts than those alleged in the Complaint and thus Chase's arguments are largely inapplicable. As the SAC describes, Chase offered a "path to modification" that ostensibly involved a *two*-contract process. (SAC ¶¶ 33-132). The first was a trial modification. Here, the borrower was to qualify for a permanent modification by making a specific number of trial payments (usually 3). In exchange, Chase promised to (1) consider plaintiffs for permanent modifications in *good faith*, (2) render a decision on the permanent modification in a timely manner at the expiration of the trial period, and, in appropriate cases (3) *offer* a permanent modification on fair terms. (SAC ¶¶ 33-132). Chase admits the existence and validity of

the TPPs, as it must, calling them "agreements" throughout the MTD, including the "background" section and elsewhere. (*See, e.g,*. MTD at pages 1-11, incl. pg. 9, lines 18-19.)  Even the TPPs themselves are internally referenced as "agreements."

The second "contract" was supposed to be a permanent modification.  In reality, these are rarely granted.  In its Motion to Dismiss, Chase focuses on this second contract—which is ***not*** the basis of plaintiffs' complaint.  Chase argues defenses based on lack of formation of the wrong contract.  These arguments miss the mark entirely.

**A.    The Contracts Established Obligations That Defendants Failed to Meet**

*1.    <u>The TPPs require timely and legitimate decisions  - not a pretext.</u>*

Chase and EMC issued several different TPP contract forms, each with slightly different language.  The following actual excerpts are typical:

> "If I comply with the requirements in Section 2 any my representations in Section 1 continue to be true in all material respects, the Lender **will** send me a Modification Agreement for my signature which **will** modify my Loan Documents." (MTD, Decl. of Shari Middlebrooks, Exh. 4) [Emphasis added].

> "Here's what you need to do now: - Read the enclosed Instructions page – Sign and complete the documents enclosed...If you qualify, we will set up a Trial Period Plan with lower monthly payments – **and work with you to modify your mortgage loan permanently**." (Chase letter to Shari Green, July 8, 2010, MTD, Decl. of Thomas Reardon, Exh. 3) [Emphasis added.]

As these excerpts show, the TPPs expressly state that defendants *will* render a decision as to a permanent modification upon tender of the final trial plan payment.  Timeliness is both implied and express.  In reality, Chase postpones the decision indefinitely on a variety of flimsy pretenses—everything from missing paperwork, to simply "needing more time."  At other times, Chase offers a permanent modification with ***higher*** payments, knowing as it must that the borrower will reject it.  When Chase can no longer string along the borrower, it arbitrarily denies the modification and invites the borrower to re-apply under a "new" or "alternative" program.  Thus, the borrower is induced to make additional "trial payments" indefinitely – in pursuit of the illusory goal.  This entire process is thereby utilized as a pretext for consumer fraud.  This conduct

- 7 -

1 | violates the TPPs.

2 |     2.     *HAMP Guidelines are non-essential to plaintiffs' contract claim.*

3 |         Chase's arguments that the TPPs did not "import" HAMP (MTD at 10 & 11), and
4 | that there is no private right of action under HAMP (MTD at 11), are irrelevant. The
5 | SAC does not allege that HAMP modified the TPPs, but rather that many of the TPPs
6 | were made under HAMP guidelines (which obviously may be used to interpret and
7 | supplement contractual language under Civil Code § 1856(c)) and that the TPPs –
8 | whether through HAMP or not – constituted enforceable contracts. HAMP guidelines
9 | were universally and uniformly applied by Chase and provided formulas for the
10 | calculation of payments for permanent modifications. (SAC ¶¶ 162-164.)  But Chase
11 | rarely used those formulas because the promise of permanent modifications was largely
12 | an illusion to induce people to make TPP payments. Nor does the SAC allege a private
13 | right of action under HAMP.

14 |         Chase's authorities are inapposite. See, *Aleem v. Bank of Am., N.A.*, No. 09-cv-
15 | 01812-VAP(RZx), 2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010) (dismissing
16 | UCL claim "to the extent it is based upon violations of the National Housing Act and
17 | HAMP. To the extent their claim is predicated on violations of state law, the Court
18 | declines to reach the merits of the state law claims").

19 |     3.     *The statute of frauds is not applicable.*

20 |         Chase argues that the oral representations alleged are barred by the statute of
21 | frauds. (MTD at 12.) The oral representations are not essential to plaintiffs' contract
22 | claims, as the written TPPs were valid, binding agreements. Regardless, Chase's
23 | authorities are distinguishable as they involve attempts by borrowers to enforce, through
24 | specific performance, oral promises for loan modifications with no written
25 | memorialization. *Cf. e.g., Collins v. Marvel Land Co.,* 19 Cal.Rptr. 291, 296 (Ct. App.
26 | 1970); *Dooms v. Fed. Home Loan Mortg. Corp.* No. CVF 11-0352, 2011 U.S. Dist.
27 | LEXIS 38550 (E.D. Cal. Mar. 31, 2011). Moreover, plaintiffs have alleged promissory
28 | estoppel (SAC ¶¶ 185-192), which negates the statute of frauds. *See Garcia v. World*

1  *Sav., FSB,* 107 Cal.Rptr.3d 683, 692 n.10 (2010) (citation omitted) (rejecting statute of

2  frauds argument in similar circumstances, noting: "A party is estopped to assert the

3  statute of frauds as a defense 'where [the] party, by words or conduct, represents that he

4  will stand by his oral agreement, and the other party, in reliance upon that

5  representation, changes his position, to his detriment"). Plaintiffs regularly were

6  promised permanent modifications and were told to keep making TPP payments because

7  Chase needed "a little more time" or "just a few more documents."[5]

8  **B.     The TPP Agreements Do Not Lack Material Terms**

9          Chase argues that the TPP Contracts are merely "agreements to agree" because

10  they lacked essential terms. (MTD at 12.) But "neither law nor equity requires that

11  every term and condition of an agreement be set forth in the contract." *Elite Show*

12  *Services, Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 269 (2004). A contract is

13  sufficiently definite to be enforceable if a court can "ascertain the parties' obligations"

14  and "determine whether those obligations have been performed or breached." *Id.* at 268;

15  *see also, Alexander v. Codemasters Group Limited*, 104 Cal. App. 4th 129, 141 (2002).

16  Terms that are "subject to objective determination" are certain enough to enforce.

17  *Carver v. Teitsworth*, 1 Cal. App. 4th 845, 853 (1991); *see also Roberts v. Adams*, 164

18  Cal. App. 2d 312, 315 (contract must "specify or furnish a standard for determination of

19  terms"). Unexpressed provisions of a contract may be inferred from the writing or from

20  external facts. *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 482 (1955);

21  *Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 409-410 (1973) ("capable of

22  being identified and rendered certain by extrinsic evidence"). "The terms of writing can

23  also be explained or supplemented by course of dealing or usage of trade or by course of

24  performance." *Southern Pacific v. Santa Fe,* 74 Cal. App. 4th 1232, 1240, 1241 (1999).

25  *See also, C.C.P. § 1856(c).*

26  _____

27  [5] Finally, part performance also is a defense to the statute of frauds. Code Civ. Proc. §1972 (West, 2011). The SAC alleges partial performance by Plaintiffs' making TPP payments, and more. (SAC ¶¶

28  33-132.)

Here, the terms of the permanent loan modifications promised in the TPPs are "subject to objective determination." *Carver*, 1 Cal. App. 4th at 853. The promise was not for loans with terms to be negotiated at some future date or under unknown standards, *Hardy v. IndyMac Fed. Bank*, 263 F.R.D. 586, 592 (E.D. Cal. 2009) (promise to provide an "affordable loan" too vague to form an enforceable contract), but rather than terms were provided in the documents, oral representations, and website representations, with specific numbers subject to calculation under the "waterfall" formula well known to Defendants. (SAC ¶¶ 162-164.) The TPP Contracts leave virtually nothing further for the parties to negotiate. The very first sentence provides: "If I am in compliance with this Trial Period Plan . . . , then the Servicer *will* provide me with a Home Affordable Modification Agreement." (TPP at 1.) Chase's claim that the contracts are vague is belied by its reference to HAMP, whose rules specify a method for determining the terms of a "Home Affordable Modification Agreement."

One of the first courts to consider HAMP observed: "If the loan qualifies for a modification . . . the servicer is obligated to provide a trial period loan modification. If the borrower remains current throughout the trial period, the servicer must then provide a loan modification." *Williams v. Geithner*, 2009 WL 3757380 *3-4 (D. Minn. Nov. 9, 2009) (emphasis added; citations omitted). Further, several federal courts have found that HAMP borrowers state a valid cause of action for breach of the TPP Contract and have denied motions to dismiss. *See, King v. CitiMortgage*, CV-10-03792-DSF, U.S. Dist, Cent. Dist, Cal., Mar. 3, 2011, document No. 70; *Jackson v. OCWEN Loan Serving*, 2-10-CV-00711-MCE , U.S. Dist, E. Dist., Cal., Feb. 9, 2011, document No. 31; *Faulkner v. Onewest Bank*, 2010 WL 2472275 *9-10 (N.D. W. Va. June 16, 2010); *Bosque v. Wells Fargo Bank*, 2011 WL 304725 at 6 (D. Mass, Jan. 26, 2011) (noting "plaintiffs have sufficiently alleged that the TPP was supported by consideration"); *Durmic v. JP Morgan Chase Bank*, 2010 WL 4825632 (D. Mass. Nov. 24, 2010); *Darcy v. CitiFinancial*, 1:10-CV-848 (W.D. Mich., Mar. 1, 2011) (finding that contract claims were "viable").

1   These agreements are distinguishable from the negotiations for individual, one-
2   time loans at issue in Chase's authorities. *See Banco do Brasil*, 234 Cal. App. 3d 973
3   (1991) (no loan application process or written agreement, and no discussion of key
4   terms); *Burgess v. Rodom*, 121 Cal. App. 2d 71, 74 (1953); *Kessler v. Sapp*, 338 P.2d
5   34, 37 (1959). These isolated, factually distinguishable cases also did not involve an
6   orchestrated consumer fraud, as alleged here.

7   **C.   The Complaint Adequately Alleges Consideration**

8   Chase argues that plaintiffs' Trial Period Payments are not adequate consideration
9   for the TPP Contracts, because plaintiffs already were legally obliged to make their
10  mortgage and insurance payments in full. (MTD at 14.)[6] Chase's argument is wrong
11  both legally and factually. Although plaintiffs had a pre-existing legal duty to make
12  mortgage payments, consideration is sufficient if the performance due under the contract
13  "differs in any way" from the pre-existing legal duty. *House v. Lala*, 214 Cal. App. 2d
14  238, 243 (1963) (quoting Rest., Contracts, § 84(c)). "It makes no difference that the
15  agreed consideration consists almost wholly of a performance that is already required
16  and that this performance is the main object of the promisor's desire." *Id.* Further,
17  "[c]onsideration may be either a benefit conferred upon the promisor **or** a detriment
18  suffered by the promisee." *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 31-32 (2000).

19  In addition to and separate from the mortgage payments already owed, plaintiffs
20  and the class members provided supplemental consideration and suffered additional
21  detriments in their agreements with Chase. First, the TPP Contracts required plaintiffs
22  to agree to make escrow payments to Chase for property taxes and insurance as a
23  condition of eligibility for the modification. (TPP ¶ 4(C); MTD, Exh. 4.)

24  Second, the TPP Contracts required plaintiffs to provide burdensome
25  documentation. (SAC. ¶¶ 66, 81, 98, 101, 125, 131; TPP 1(D).) Plaintiffs' expenditures
26  of additional time and energy associated with their TPP obligations are sufficient

27

28  ───────────
[6] Chase apparently concedes that consideration flowing from Defendants existed, in the form of the promise to modify Plaintiffs' mortgage loans to lower the monthly payments.

consideration. Chase's argument was soundly rejected in *Durmic v. J.P. Morgan Chase Bank*, 2010 WL 4825632 at *3 (2010 D. Mass):

> Plaintiffs relinquished more than the TPP payments. Under the TPP, they were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so by Chase. Plaintiffs could also be required to make payments into a newly established escrow account. Plaintiffs were under no preexisting legal obligation to meet any of these conditions....

> Consideration may also be measured by the benefit a promise confers on the other party. Plaintiffs point to the fact that where the TPP required borrowers to establish new escrow accounts for their mortgage payments, the risk to Chase of a default on property tax obligations was reduced, thereby increasing the value of Chase's security interest. Mandatory credit counseling also presumably reduced the risk of default. Plaintiffs' provision of detailed financial information allowed Chase to predict with greater certainty their ability to pay. Thus, although plaintiffs need only allege a legal detriment on their part or a benefit to Chase to establish sufficient consideration, for present purposes, they have alleged both.

*See also, Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 672-674 (1974) (although agreement to make mortgage payments already due is not consideration, borrower's additional promise to find a buyer during forbearance period is adequate consideration for promise to postpone foreclosure sale). Just as finding a new purchaser was not part of the original bargain in *Raedeke*, making escrow payments for taxes and insurance, and repeatedly providing intrusive financial documentation, were not requirements of the original mortgage agreements between plaintiffs and Chase.

Third, borrowers, including plaintiffs, suffered derogatory credit reporting during the Trial Period due to the lower monthly TPP payments, even if their accounts were current when they started the trial modification. (SAC ¶¶ 47, 97, 127; SD 09-01 at 22.) See *Durmic v. Chase,* 2010 WL 4825632 at * 3.

The SAC also identifies numerous additional elements of consideration provided by, and detriment suffered by, plaintiffs and putative class members, including: (a) foregoing or delaying selling their residences; (b) foregoing or delaying refinancing the debt on the residences; (c) foregoing or delaying filing bankruptcy to restructure or discharge their financial obligations; (d) foregoing or delaying legal action at an earlier

juncture; (e) foregoing or delaying alternate remedies at an earlier juncture; (f) foregoing or delaying negotiating for a short sale, deed in lieu of foreclosure, debt restructuring, or other alternatives to foreclosure; (g) remaining in and maintaining their homes; (h) continuing to pay money in mortgage payments in order to obtain the loan modifications, which amounts they otherwise would not have paid; and (i) continuing to pay money to keep the homes insured in order to obtain the loan modifications, which amounts they otherwise would not have paid. (See, SAC, 42, 46, 47, 73, 97, 125, 133).

Further, Chase also reaps benefits from the TPP Contracts in that plaintiffs' performance makes Chase potentially eligible for HAMP incentive payments for loans permanently modified.  (Compl. ¶ 31, SD 09-01 at 23; SD 09-04.)  In addition, Chase benefits financially from collecting escrow payments for taxes and insurance payments that are not yet due.

The TPPs require plaintiffs to perform tasks and suffer detriment beyond the mortgage payments already due. "The law does not weigh the quantum of the consideration." *Brawley v. Crosby Research Found., Inc.*, 73 Cal. App. 2d 103, 112 (1946).  These additional detriments and burdens are more than sufficient consideration.[7]

## V.   THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING

Chase violated the covenant of good faith and fair dealing inherent in the TPP Contracts (SAC ¶ 169), which imposes "the duty to refrain from doing anything which would render performance of the contract impossible" and "the duty to do everything

---

[7] Chase argues that Plaintiffs could have simultaneously pursued a trial modification and other options, (MTD at 15) and thus that Plaintiffs' forebearances were not consideration.  To the extent this argument merely disputes the SAC's factual allegations, it cannot support the 12(b)(6) motion.  But it also is legally unsupported, as Chase's cite to Restatement (Second) of Contracts § 71 (1981) ("To constitute consideration, a performance or a return promise must be bargained for") does not state that every separate item of consideration must have been within the four corners of the contract in order to have been "bargained for."  Even if Chase were correct that these incidents of *forebearance* were not consideration, Plaintiffs also undisputedly took *acts* constituting consideration (including providing required documents and making trial payments). *See* Rest. Second of Contracts, *supra*, sec. 90, subd. (1) (promise actionable if it induces "action or forbearance").

- 13 -

that the contract presupposes that [defendant] will do to accomplish its purpose." *Harm
v. Frasher*, 181 Cal. App. 2d 405, 417 (1960). *See also Storek & Storek, Inc. v. Citicorp
Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 ("every contract imposes upon each party a
duty of good faith and fair dealing in the performance of the contract such that neither
party shall do anything which will have the effect of destroying or injuring the right of
the other party to receive the fruits of the contract"). *See also* Rest. (Second) Contracts
§205 Comment (d), n. 7("Restatement, Note 7") (breaches of the covenant may include
"evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering
of imperfect performance, abuse of a power to specify terms, and interference with or
failure to cooperate in the other party's performance").

Federal courts within and outside California have denied motions to dismiss
implied covenant claims in loan modification class actions. *See King v. CitiMortgage*,
CV-10-03792-DSF (USDC, Central District, Cal., March 3, 2011, document No. 70);
*Jackson v. OCWEN Loan Serving*, 2-10-CV-00711-MCE (USDC, Eastern District, Cal.,
February 9, 2011, document No. 31); *Bosque v. Wells Fargo Bank*, 2011 WL 304725 at
6 (D. Mass, Jan. 26, 2011). *See also Durmac, Darcy*, and *Faulkner, supra.* Chase cites
to *Torres v. Litton,* No. 10-CV-01709-OWW-SKO, Docket No. 26 (E.D. Cal, April 13,
2011), but *Torres* is highly distinguishable because 1) defendant's motion to dismiss
was **not** opposed (see, Docket No. 23); 2) it was fundamentally a wrongful foreclosure
case; and 3) the claims were not well pled.

Addressing the implied covenant claim in a footnote (MTD at 16, n.9), Chase
ignores the SAC's actual allegations, which allege that Chase: engaged in "evasion of
the spirit of the bargain" ("Restatement, Note 7"), by "misrepresenting the requirements
for achieving permanent loan modifications and the status of loan modification
applications" (SAC ¶ 2(a)); engaged in "lack of diligence and slacking off"
("Restatement, Note 7"), by "delaying the modification approval process and then
rejecting applications on grounds that submitted documents were 'stale' or outdated"
(SAC ¶ 2(c)); engaged in "willful rendering of imperfect performance" ("Restatement,

Note 7"), by "systematically and continually erecting artificial obstacles in the loan
modification process" (SAC Par. 2(c)); engaged in "abuse of a power to specify terms"
("Restatement, Note 7"), by "misrepresenting the amounts due under and the terms of
the loans being serviced, including unlawfully applying mortgage payments or holding
payments in 'suspense accounts,' resulting in improperly escalated debt obligations,
including interest and other unlawful charges." (SAC ¶ 2(d)); engaged in "interference
with or failure to cooperate in the other party's performance" ("Restatement, Note 7"),
by "systematically and continually erecting artificial obstacles such as repeatedly
'losing' borrower documents, rotating personnel assigned to borrower files, altering
modification requirements, making duplicate requests for the same documents; delaying
and then refusing modifications on grounds that documents were "stale," (and similar
'red tape') with the intent of obstructing, delaying, or preventing permanent loan
modifications." (SAC ¶ 2(c)).

Further evidencing Defendants' bad faith, toward the end of this tortious process,
EMC offered Wilcox and the Hoods permanent modifications with monthly payments
***higher than their original mortgage payments*** (SAC ¶ 67, 107-108). This is effectively
a denial, as obviously EMC knew these would be rejected, and EMC also denied
permanent modifications for, alternately, false reasons, inconsistent reasons, and
undisclosed reasons. (SAC ¶ 87, 89, 90, 92, 109, 100, 113, 114, 121, 124, 126, 131.)
Taking the SACs allegations together, especially in light of its consumer fraud
allegations and the three former employee declarations (Smith Decl., Exhibits 6, 7 and
8), the SAC alleges "unfair dealing rather than mistaken judgment," *Careau & Co. v.
Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990), and is
sufficient to state a claim.[8]

_____

[8] Chase argues that the implied covenant is limited to assuring compliance with the express terms of
the contract. (MTD at 16 n.9.) The caselaw discussed above states the true legal standard. Timeliness
of decision and good faith consideration for a permanent modification are express terms of the contract.
Moreover, the TPP contracts are meaningless if they do not impose a duty to consider applicants for
permanent modifications in **good faith**. (MTD at 9, lines 18-19.) Thus, Chase's argument fails.

OPPOSITION TO MOTION TO DISMISS

# VI. THE COMPLAINT SUFFICIENTLY ALLEGES PROMISSORY ESTOPPEL

Promissory estoppel "provide[s] a substitute for the consideration which ordinarily is required to create an enforceable promise." *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 672-673 (1974). *See also* Rest. Second of Contracts, sec. 90, subd. (1)("A promise which the promisor should reasonably expect to induce action or forbearance [by] the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise"). This is a textbook claim for promissory estoppel. Numerous federal courts in loan modification class actions have denied motions to dismiss promissory estoppel claims.[9]

## A.    The Complaint Alleges Clear, Unambiguous Promises

Chase argues that plaintiffs did not receive promises of permanent modification. (MTD at 17.) To the contrary, the SAC alleges  that Chase promised plaintiffs a permanent modification if they completed trial period payments and completed documentation requirements.  (SAC ¶¶ 42, 25, 29, 80, 82 (plaintiff Wilcox); SAC ¶¶ 97-99, 101, 103-105, 109-111, 113 (plaintiffs Hoods); 118-119, 122-123, 125, 130)(plaintiff Green).)

Relying on *Laks v. Coast Fed. Sav. & Loan Assn.*, 131 Cal. Rptr. 3d 836 (1976), Defendants argue that the basic terms of the modification are missing.  (MTD at 17.) *Laks* is inapposite.  There, a proposed lender issued a "[c]onditional commitment letter" for a hotel development "which indicated parties were still in negotiation stage as to important conditions." *Id.* at 836.  The proposal depended on borrower obtaining loans from other banks, and it lacked key terms such as "security for the loan," "identity of the borrower," "schedule of payment," "prepayment conditions, terms for interest calculations, method for loan disbursements, and "rights and remedies" for default." *Id.* at 837.  Unlike the missing terms in the commercial loan in *Laks*, here a federal

---

[9] *See, inter alia,* the following authorities which were ignored in the MTD: *King v. CitiMortgage*, CV-10-03792-DSF (U.S.D.C. C.D. Cal., March 3, 2011, document No. 70); *Bosque v. Wells Fargo Bank*, 2011 WL 304725 at *5 (U.S.D.C. D. Mass, Jan. 26, 2011); *Jackson v. OCWEN Loan Serving*, 2-10-CV-00711-MCE (U.S.D.C. E.D. Cal., February 9, 2011, document No. 31); *Durmic v. JP Morgan Chase Bank*, 2010 WL 4825632 (U.S.D.C. D. Mass. Nov. 24, 2010).

1  consumer program (HAMP), to which Defendants had subscribed, supplies a known

2  "waterfall" formula for calculating key elements of a prospective modified loan.[10]

3  **B.    The Complaint Alleges Reliance and Detriment**

4       Chase next argues that plaintiffs did not reasonably rely on Defendants and that

5  they suffered no detriment as a result of Defendants' actions.  (MTD at 14:5-8, 15-25.)

6  But the SAC alleges that, in reasonable reliance on Chase's promises, plaintiffs entered

7  into TPPs, submitted required documents, made TPP payments, and complied with all

8  requests.  (SAC ¶¶ 43-47, 49, 55, 59, 81, 83,-84 (plaintiff Wilcox); SAC ¶¶ 97-98, 100-

9  103, 106, 110, 114 (plaintiffs Hoods); SAC ¶¶ 120, 123-126, 129, 131 (plaintiff Green).)

10 Plaintiffs clearly allege a change of position, by "action or forbearance."  Rest. Second

11 of Contracts, sec. 90, subd. (1)).  *See also Garcia v. World Savings, supra*, 107

12 Cal.Rptr.3d at 692-693 (discussing cases identifying acts and forebearances supporting

13 promissory estoppel).  Chase disputes the reliance allegations but on this motion they

14 must be taken as true.  *Sanders v. 12 Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

15      Chase's selective authorities are distinguishable.  In *Wigod v. Wells Fargo Bank,*

16 *N.A.*, No. 10-cv-2348, 2011 U.S. Dist. LEXIS 7314 (N.D. Ill. Jan. 25, 2011)(emphasis

17 added), unlike the present case, plaintiff did not meet all the requirements for a

18 permanent modification: "Wigod could not reasonably have relied on just the opening

19 statement because it would have required her to ignore the remainder of the contract

20 *which required her to meet all of HAMP's requirements*."  In *Grill v. BAC Home Loans*

21 *Servicing LP*, No. 2:10-CV-03057-FCD/GGH, 2011 U.S. Dist. LEXIS 3771 (E.D. Cal.

22 Jan. 14, 2011), unlike here, the plaintiff there made only "conclusory allegation[s]" of

23 detriment.  In *Prasad v. BAC Home Loans Servicing*, No. 2:10-CV-2343-FCD/KJN,

24 2010 U.S. Dist. LEXIS 133938 (E.D. Cal. Dec. 7, 2010) "plaintiff's complaint does not

25

---

26 [10] Chase's other authorities are also not applicable.  *Glen Holly Ent'mt, Inc. v. Tektronix, Inc.*, 100 F.
27 Supp. 2d 1086, 1101 (C.D. Cal. 1999), holds merely that generalized, puffery-like statements were not
   clear, unambiguous promises. *Locke v. Wells Fargo Home Mortgage*, No. 10-60286, 2010 U.S. Dist.
28 LEXIS 126140 (S.D. Fla. Nov. 30, 2010), held neither "a letter notifying [plaintiffs] that they 'may be
   eligible for a trial modification'" nor vague conversations with bank employees were sufficiently
   definite promises.

1  sufficiently allege substantial detriment," and the analysis was based on the wrong

2  contract, and plaintiffs' contract theories were different.

3      Unlike in Chase's authorities, and contrary to Chase's argument, plaintiffs clearly

4  allege that they suffered detriment as a result of their reliance on Chase's

5  representations. The SAC alleges that they suffered higher loan balances, negative

6  credit consequences, lost opportunities to otherwise cure their default, improper

7  foreclosure actions, missed opportunities to sell their homes, and other detriment. (SAC

8  ¶¶ 46-48, 50-54, 56-57, 60, 65-66, 73, 75 (plaintiff Wilcox); SAC ¶¶ 97, 114 (plaintiffs

9  Hoods); SAC ¶¶ 125, 127-128 (plaintiff Green).) See also SAC ¶¶ 8, 131, 133. These

10 allegations are well pled. *See Bosque v. Wells Fargo Bank*, 2011 WL 304725 (D. Mass,

11 Jan. 26, 2011) (denying motion to dismiss promissory estoppel claim; "several injuries

12 result[ed] from defendant's allegedly deceptive representations about HAMP, including

13 wrongful foreclosure, increased fees, costs incurred to avoid foreclosure, [and] loss of

14 opportunities to pursue refinancing or loss mitigation strategies"); *Durmic v. JP Morgan*

15 *Chase Bank*, 2010 WL 4825632 at *3 (U.S.D.C. Mass. Nov. 24, 2010)("[p]laintiffs have

16 pled that with each passing month, their original loan documents remain in effect,

17 subjecting them to the accrual of charges, a further risk of delinquency, damage to their

18 credit ratings, and a heightened risk of eventually losing their homes to foreclosure").

19 **VII.  THE COMPLAINT ADEQUATELY ALLEGES U.C.L. VIOLATIONS**

20      California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent

21 business act or practice." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266

22 (1992). California courts have "consistently interpreted the language of section 17200

23 broadly." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877

24 (1999). The Complaint squarely alleges that Chase used unfair, deceptive and unlawful

25 means to induce plaintiffs to enter trial modifications, prolong trial modification periods,

26 and wrongfully deny permanent modifications.

27      **A.  Plaintiffs Have Adequately Alleged Unlawful Business Practices**

28

1       "The UCL covers a wide range of conduct. It embraces anything that can properly

2 be called a business practice and that at the same time is forbidden by law. . . . Section

3 17200 'borrows' violations from other laws by making them independently actionable

4 as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479

5 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*,

6 29 Cal.4th 1134, 1143 (2003)).   In *Korea Supply*, the California Supreme Court noted

7 that "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some

8 constitutional, statutory, regulatory, common law, or other determinable legal standard."

9 *Id.* at 1159.   The unlawful prong of the UCL is not predicated on deceptive conduct and

10 does not require misrepresentations or omissions.   *Kasky v. Nike, Inc.* (2002) 27 Cal.4th

11 163, 950; *Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163.

12       The SAC alleges unlawful business practices by Chase's common law violations,

13 including breach of contract, fraud, unjust enrichment, and promissory estoppel.   SAC ¶

14 154(d), (f), (g), and (h).   *See also* SAC ¶¶ 158-173 (breach of contract), ¶¶ 179-184

15 (fraud), ¶¶ 174-178 (unjust enrichment), and ¶¶ 185-192 (promissory estoppel). The

16 SAC also alleges violations of a Chase consent order, and two statutes, that expressly

17 address homeowner protections, which violations constitute unlawful business practices.

18 (SAC at ¶¶154(a)-(c).)   These allegations of illegal conduct, especially in the context of

19 the SAC as a whole, are clear.   To allege an "unlawful" business practice under the

20 UCL, a plaintiff need only allege the law violated and the facts underlying the violation.

21 *See, e.g., Microsoft Corp. v. A-Tech Corp.*, 855 F.Supp. 308, 313 (C.D. Cal. 1994).

22 Finally, the SAC also alleges statutory violations of the CLRA, which support the

23 unlawful business practices claim.   *See Hunter v. General Motors*, 2007 WL 4100084 *

24 10 (Nov. 19, 2007)("violation of the CLRA itself, which plaintiffs incorporated into

25 their UCL claim by reference, is a proper basis for a violation of the unlawful prong of

26 the UCL").

27       Chase's authorities (MTD, pg. 20) do not hold that a violation of section 2923(6)

28 cannot constitute an unlawful business practice under Section 17200, but hold only that

1   there is no *private right of action* for violation of section 2923(6). [11] Plaintiffs' do not

2   allege a **direct** violation of section 2923(6) but rather have "borrowed" Chase's

3   violation of section 2923(6) as an unlawful business practice. [12]

### B.   Plaintiffs Have Adequately Alleged Unfair and Fraudulent Business Practices

6   "An 'unfair' business practice occurs when that practice offends an established

7   public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

8   substantially injurious to consumers." *Smith v. State Farm,* 93 Cal. App. 4th 700, 718

9   (2001) (citations omitted) (listing examples of unfair business practices, including

10  "placing unlawful or unenforceable terms in a form contract").

11  To state a claim for an "unfair" business practice, a plaintiff must allege facts

12  showing the "unfair" nature of the conduct and allegations sufficient to meet the two

13  tests for unfairness in the consumer context:  (1) whether the harm to the consumer

14  outweighs the utility of the conduct in question, **or** (2) whether the practice violates a

15  public policy that is tethered to a legislatively declared policy.  *Lozano v. AT&T*

16  *Wireless Servs. Inc.,* 504 F. 3rd 718, 738 (9th Cir. 2007).  Whether a business practice is

17  "unfair" involves weighing the utility of the defendant's conduct against the gravity of

18  the harm ascribed to the alleged victims, which **cannot** properly be resolved on a motion

19  to dismiss. *Lippitt v. Raymond James Fin. Serv.,* 340 F.3d 1033, 1043 (9th Cir. 2003);

---

[11] *See, Pantoja v. Countrywide Home Loans, Inc.,* 640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009); *Connors v. Home Loan Corp.,* No. 08cv1134-L (LSP), 2009 U.S. Dist. LEXIS 48638 (S.D. Cal. June 9, 2009); *Pitmann v. Barclays Capital Real Estate, Inc.,* No. 09-CV 0241 JM (AJB), 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009); *Farner v. Countrywide Home Loans,* No. 08cv2193, 2009 U.S. Dist. LEXIS 5303, (S.D. Cal. Jan. 26, 2009).

[12] Chase's cited authorities also were negligently prosecuted. *See Anaya v. Advisors Lending Gp.,* No. CV F 09-1191, 2009 U.S. Dist. LEXIS 68373 (E.D. Cal. Aug. 5, 2009) (plaintiff "did not file any opposition to oppose dismissal of her claims"; "Plaintiff's complaint fails to identify or allege any violations of Business and Professions Code § 17200"); *Connors, supra* ("[i]n his response to defendants' motion, plaintiff does not address this issue in any manner. The Court construes the lack of response to be a waiver of the issue and therefore, dismisses this cause of action with prejudice"); *Farner, supra* ("Defendants filed a response to the OSC. Plaintiffs have not filed any reply").

1 | *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980).

2 |      The SAC adequately alleges unfair conduct in the form of, *inter alia*: specific

3 | material misrepresentations and omissions, abusive and repetitive documentation

4 | requests, misstating the status of modification applications, and unfair prolonging of the

5 | trial periods. The SAC thus adequately alleges unfair business practices, as in other loan

6 | modification class actions. *See also King v. CitiMortgage*, CV-10-03792-DSF (USDC,

7 | Central District, Cal., March 3, 2011, document No. 70)(denying motion to dismiss

8 | UCL claim); *Bosque v. Wells Fargo Bank*, 2011 WL 304725 at 6 (D. Mass, Jan. 26,

9 | 2011)(denying motion to dismiss Massachusetts Consumer Protections Act claim);

10 | *Durmic v. JP Morgan Chase Bank*, 2010 WL 4825632 (D. Mass. Nov. 24, 2010) )

11 | (deferring motion to dismiss Consumer Protections Act claim claim). In particular, the

12 | SAC states a claim under either "unfair" test. *Lozano.*, 504 F. 3rd at 738. First, the harm

13 | to plaintiffs outweighs the utility of Chase's misconduct, as there is **no** social utility in

14 | defrauding and misleading consumers and then denying them loan modifications.

15 | Second, Chase's misconduct violates numerous legislatively declared public policies

16 | designed to protect consumers generally and homeowners in particular.[13]

17 |      Contrary to the principles governing motions to dismiss, Chase contradicts the

18 | SAC's allegations (*see* MTD at 21, lines 6-10, disputing the allegations that plaintiffs

19 | Hood and Green were told to stop making mortgage payments), and dodges other

20 | allegations (*see* MTD at 21, lines 11-18, ignoring the allegations that plaintiff Hood was

21 | not in default before Defendants told them to stop making payments (SAC ¶¶ 96-97), or

22 | that plaintiff Wilcox was not in default on credit cards before Defendants told her to

23 | stop making payments (SAC ¶ 42) ). The SAC, fairly read, alleges a scheme of unfair

24 | conduct: Chase dishonestly promised borrowers something without the intention or

25 |

---

26 | [13] The SAC at ¶ 154 alleges: (a) Violations of Chase's January 9, 2008 Stipulated Final Judgment and Order with the United States Federal Trade Commission which enjoined Chase and EMC from making
27 | various misrepresentations in connection with mortgage loans; (b) Violations of California Civil Code section 2923.6(b); and (c) Violations of Dodd-Frank Wall Street Reform & Consumer Protection Act
28 | of 2010.

1  ability to provide it; lured borrowers who believed they had cleared all but the final

2  hurdles into making Trial Period payments; and failed to provide the resources,

3  supervision, and competence necessary to meet its obligations to consider in *good faith*

4  and/or provide permanent modifications. (See, SAC ¶¶ 33-132) Plaintiffs' allegations

5  are squarely pled and certainly are not "extravagantly fanciful," *see Iqbal*, 129 S.Ct at

6  1951, as confirmed by the three witness declarations. (Exhibits 6, 7, and 8.) [14]

7  ## C.   Plaintiffs Have Adequately Alleged Injury

8  Chase argues that plaintiffs lack standing under the UCL because they suffered no

9  monetary harm. This argument ignores the well-pled allegations of the SAC that

10  Chase's unfair, unlawful and fraudulent practices caused increased debt, fees, and other

11  injuries. *See* SAC ¶¶ 46-48, 50-54, 56-57, 60, 65-66, 73, 75 (plaintiff Wilcox); SAC ¶¶

12  97, 114 (plaintiffs Hoods); SAC ¶¶ 125, 127-128 (plaintiff Green).) See also SAC ¶¶ 8,

13  131, 133. *See also Durmic, supra*, 2010 WL 4825632 at *3; *Bosque, supra*, 2011 WL

14  304725. In addition, injunctive relief and restitution are available remedies under the

15  UCL, which plaintiffs have sought. (SAC ¶157 and Prayer.) *Kwikset v. Superior Court,*

16  51 Cal. 4th 310 (Jan. 2011).

17  # VIII. THE COMPLAINT ADEQUATELY ALLEGES UNJUST ENRICHMENT

18  Plaintiffs "may assert a claim for restitution based on a theory of unjust

19  enrichment." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100-02 (N.D. Cal.

20  2006). [15] The SAC alleges many benefits Chase unjustly obtained at plaintiffs' expense:

21  (a) avoiding prosecuting multiple foreclosures beyond available resources; (b) avoiding

22  liquidating under-valued real estate; (c) increasing loan servicing fees by maintaining

23

24  [14] To the extent the allegations supporting the UCL claims coincide with Plaintiffs' breach of contract allegations, they nonetheless state an independent claim under the "unfairness" prong, as California courts have repeatedly held that "a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL." *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 490 (2010).
[15] *See also Hirsch v. Bank of America*, 107 Cal.App.4th 708, 722 (2003) ("Appellants have stated a valid cause of action for unjust enrichment"); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("[u]nder California law, unjust enrichment is an action in quasi-contract"); *Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d 495, 498 (9th Cir. 1953) ("[I]t is of course true that the California courts … recognize a cause of action based on unjust enrichment").

1 loans that otherwise would be terminated and receiving more money for servicing

2 distressed loans; and (d) artificially bolstering their financial statements by minimizing

3 reporting of distressed loans.  (SAC, ¶ 176.)

4      Chase argues that it was not unjustly enriched because it already was owed money

5 under the borrowers' existing mortgage loans.  But the SAC alleges that Chase was

6 unjustly enriched not by plaintiffs' existing mortgages, but by Chase's promises to

7 modify those mortgages.  Again, Defendants are focusing on the **wrong** contract.

8 Chase's authorities involving efforts to use unjust enrichment to circumvent express

9 written contracts (MTD at pg. 22) are thus irrelevant.

10 **IX.   THE COMPLAINT ADEQUATELY ALLEGES FRAUD**

11      Chase argues that plaintiffs fail to allege facts constituting fraud. (MTD at 23.)

12 But the SAC adequately alleges fraudulent conduct (SAC ¶¶ 42, 25, 29, 80, 82, 97-99,

13 101, 103-105, 109-111, 113, 118-119, 122-123, 125, 130, 156(a)-(b)).  These well-pled

14 allegations may not be defeated on a motion to dismiss.  Chase argues, in particular, that

15 plaintiffs' reliance was not reasonable. (MTD at 23.)  The gist of Chase's argument is

16 that, because of the misinformation and confusion sown by Chase, plaintiffs could not

17 have reasonably relied on Chase's representations and omissions.  Ignoring the legal

18 standards on a motion to dismiss, Chase asks the Court *not* to construe the complaint in

19 the light most favorable to the plaintiff, *not* to accept  well-pled factual allegations as

20 true, and *not* to draw all reasonable inferences in plaintiff's favor. *Twombly*, 550 U.S. at

21 555-56; *Iqbal*, 129 S. Ct. at 1949.  Applying the proper standards, plaintiffs have pled

22 reasonable reliance.  (SAC ¶ 182).  Chase may not prevail merely by disputing factual

23 allegations.  Further, it is certainly feasible that reasonable consumers could be (and

24 were) deceived by Chase's orchestrated hoax.

25      Nor do Chase's authorities support its reliance argument.  In *Brookwood v. Bank*

26 *of Am. Nat'l Trust & Sav. Ass'n.*, 53 Cal. Rptr. 2d 515, 520 (Ct. App. 1996), which did

27 not even involve a motion to dismiss, the court affirmed an order compelling arbitration,

28 rejecting a "unilateral mistake" argument based on plaintiff's failure to read the

- 23 -

1   arbitration agreement. In *Yazdanpanah v. Sacramento Valley Mortg. Grp.*, No. C 09-

2   02024, 2009 U.S. Dist. LEXIS 111557, at *9-10 (N.D. Cal. Dec. 1, 2009), the court held

3   that "Plaintiff cannot claim that he reasonably relied on any misrepresentation or non-

4   disclosure of the terms of his home loan because he signed the promissory note and deed

5   of trust which set forth those terms expressly. *Id*. at *10.[16] Finally, it bears noting that

6   plaintiffs here seek *not* to *avoid* the agreements with Chase, but rather to *enforce* them.[17]

7   **X.    THE COMPLAINT ADEQUATELY ALLEGES C.L.R.A. VIOLATIONS**

8         Chase argues that plaintiffs' CLRA claim fails because loan servicing does not

9   qualify as "services" under Civil Code Section 1770(a). Many of Chase's cited cases

10  are distinguishable as they do not involve loan servicing but rather lending, extension of

11  credit, or other industries such as insurance. Chase also ignores numerous federal cases

12  in California holding to the contrary. In *Labrador v. Seattle Mtg. Co.*, 2008 WL

13  4775239 at 5 (N.D. Cal., Oct. 29, 2008), the court, in a detailed discussion in the

14  mortgage lending context, rejected Chase's authorities, and "conclude[d], as it did in

15  2005 in *Knox*, that mortgage loans such as those in the instant action may be covered by

16  the CLRA." The *Labrador* court cited *Jefferson v. Chase, supra,* in which that federal

17  court ruled that the CLRA applies to "financial services" concerning mortgage loans and

18  expressly rejected *McKell v. WaMu* ("this Court does not find McKell to be persuasive .

19  . .") and *Barry v. American Express* ("this Court does not find that case persuasive . . .").

20  *Jefferson v. Chase,* at 2 & 3.

21        After the Supreme Court's *Fairbanks* decision, a federal court in California

22  ───────────────────

23  [16] In *Yazdanpanah,* Plaintiff, who had defaulted on $3 million worth of mortgage loans, and whose property had been sold at auction (id. at *2-3), filed a poorly prosecuted complaint (id.  at *3-4) that

24  sued eight defendants with no specificity: "Plaintiff merely groups all Defendants together without specifying the role each is alleged to have played in committing the fraud . . . [who] made the alleged

25  misrepresentations, when the misrepresentations were made, or how the misrepresentations were fraudulent." 2009 U.S. Dist. LEXIS 111557 at *8-9. Unlike *Yazdanpanah,* the misrepresentations and

26  omissions alleged here are identified and are tied to specific defendants or employees thereof.

27  [17] Chase's final argument regarding fraud is that Plaintiffs "have not identified any damages resulting from the alleged misrepresentations." MTD at 24. But the SAC more than adequately alleges injury to

28  Plaintiffs as a result of Chase's actions. *See* SAC, ¶¶ 46-48, 50-54, 56-57, 60, 65-66, 73, 75, 97, 114, 125, 127-128, 131, 133.

concluded that mortgage refinancing-related services were "services" under the CRLA. *See Hernandez v. Sutter West Capital,* 2010 WL 539133 at 4 (N.D. Cal., Feb. 8, 2010): "[A]s in this case, *Hernandez v. Hilltop* [citations omitted] dealt not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan . . . Judge Illston therefore concluded that the CLRA does indeed apply to the 'services' involved in creating an appropriate refinance package. Judge Illston's analysis is persuasive . . ." *See also Cartwright v. Viking Industries*, 249 FRD 351, 357 (E.D. Cal. 2008) (denying 12(b)(6) motion seeking to strike CLRA, stating that "the exception set forth in CRLA Section 1754 only applies in the narrow circumstances of the actual sale or construction of real property").

This Court must apply California law to this issue as it believes the California Supreme Court would. *In re: K.F. Diaries & Affiliates,* 224 F.3rd 922, 924 (9th Cir. 2000). Extensive federal authority in California confirms that mortgage loan servicing constitutes "services" under the CLRA, including *Hernandez v. Sutter West, Jefferson v. Chase, Labrador v. Seattle Mtg., Hernandez v. Hilltop,* and *Cartwright v. Viking Industries*, and these decisions comport with the CLRA's policy that it be "liberally construed . . . to promote its underlying purposes . . . to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Civil Code section 1760.

## XI.  CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny Chase's Motion to Dismiss. In the unlikely event that the Court is inclined to grant the motion, plaintiffs' request that they be afforded leave to amend.[18]

LANZA & SMITH, PLC

DATED:  April 25, 2011                 By: _____

Anthony Lanza
Brodie H. Smith

---

[18] In the event of an amendment, plaintiffs would likely seek leave to add a claim under the California Fair Debt Collection Practices Act.